[No. 15992.  *En Banc.*  June 7, 1921.]

MARY E. JARRARD, *Respondent,* v. G. T. JARRARD, *Appellant.*[1]

DIVORCE (47-1)—DECREE—VACATION—COLLUSION—EVIDENCE—SUF-FICIENCY. Collusion of parties to a divorce action is not established by a showing that, after a wife had knowledge of the pendency of the action, she demanded a property settlement, intimating that otherwise she would defend and defeat the action, and the negotiations between them finally resulting in an agreement that the wife should receive title to the home property in full of her property rights.

SAME (49)—VACATION—PUBLIC INTEREST—DISCRETION. The action of a trial court in setting aside a default decree of divorce and permitting the defendant to defend the action, where application was made promptly after default and no change in conditions had occurred, was a proper exercise of discretionary power vested in courts because of the public interest or policy attaching to divorce actions.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered May 17, 1920, upon findings in favor of the plaintiff, in an action to set aside a divorce decree. Affirmed.

*D. R. Glasgow,* for appellant.
*W. C. Donovan,* for respondent.

TOLMAN, J.—The respondent, on January 3, 1920, signed and verified a petition, which was duly filed two days later (whether served in the interim does not appear), in and by which she sought to have set aside

[1]Reported in 198 Pac. 741.

a decree of divorce entered by default on December 30, 1919, in favor of her husband, the appellant here. The petition charges that the decree was obtained by reason of fraud practiced by the prevailing party, (a) in obtaining service by publication by mailing a copy of the summons and complaint to her, general delivery, Portland, Oregon, when he knew her street address in that city, alleging that she never received the papers which were so mailed, and (b) charging in effect that the husband testified falsely upon the trial of the divorce action that a property settlement had theretofore been made, and that he knew of no reason for his wife having left him, when in fact he induced and persuaded her to leave and gave her money with which to do so, and making further allegations, which, if true, would defeat the husband's action and probably entitle the wife to a divorce. Appellant, by answer, took issue upon these allegations. The case came on for trial before a judge other than the one who had heard the divorce case, and from a judgment vacating the decree of divorce and permitting respondent to appear in, answer and defend the divorce action, the case is brought here on appeal.

The trial court found that there was no fraud in the matter of the service of the summons, and no irregularity therein, with which finding we are in entire accord. He also found that there was collusion between the parties prior to the entry of the decree, that respondent has a meritorious defense to the divorce action, and that public policy demands that the decree be vacated and the wife be permitted to defend.

We are not satisfied that collusion is here shown, as collusion is usually defined. The wife, after she had knowledge of the pendency of the action, demanded a property settlement, and intimated that, unless a set-

tlement satisfactory to her was made, she would defend and defeat the action.  All her demands were made by letters written to her husband's attorney, and we see nothing collusive in his answers thereto, his submission of the demands to his client, or in the agreement which was reached that the wife should receive title to the home property in full of her property rights.

We are satisfied that there was a sufficient showing of a meritorious defense to warrant the court, under Rem. Code, § 235, were this other than a divorce action, in permitting the defendant, served by publication, to appear and defend the action.  The legislature seems to have excepted divorce actions from the operation of this statute upon no other theory, so far as we can judge, than that, within the year, the situation might so change as to make it unwise to disturb a decree; but where the application is made, as here, promptly and within a very few days of the rendition of the judgment, and no change in conditions has occurred, the reason for the rule does not exist.

But, in any event, speaking of this section of the statute in *Chaney v. Chaney,* 56 Wash. 145, 105 Pac. 229, Mr. Justice Parker said:

"It did not take away any rights possessed by the parties having judgments rendered against them, but gave additional rights to parties having judgments rendered against them upon service by publication.  In the absence of this provision, a judgment rendered upon service by publication could not be set aside for any different reason than could other judgments.  This section is not the whole law upon the subject of setting aside divorce decrees, simply because such decrees are excluded from its operation."

And in *Graham v. Graham,* 54 Wash. 70, 102 Pac. 891, after reviewing the previous decisions of this court upon this subject, it was said:

"It would seem, therefore that, notwithstanding the doctrine frequently announced that a decree of divorce will never be vacated because of the probable evil consequences following the severance of a new relation, bearing as it might after-begotten children, the better rule is that, notwithstanding the decree, a court will reopen and try the case if the decree is the result of fraud practiced upon the other party or upon the court."

And in the same case, in discussing the grounds upon which a decree of divorce may be vacated, it was further said:

"It is contended, however, that, the lower court having had complete jurisdiction, a mere offer to prove that the decree was obtained as the result of perjured testimony and was fraudulently obtained is insufficient. Whatever the rule may be when the divorce proceeding is collaterally inquired into, it must be remembered that this is a direct application, timely, and diligently prosecuted, and no harm can result to any innocent person by a further inquiry as to the justice of respondent's cause.

"Aside from these considerations, the interest of the public in all actions for divorce is such that a policy has grown up in accord with enlightened sentiment to discourage and deny divorces unless claimed upon proper grounds and sustained by an honest disclosure of the facts. There is much in the record that prompts further inquiry."

· It is apparent from the record before us that the respondent knew of the pendency of the action in ample time to have made her defense before the default was taken against her, and that no sufficient excuse is now offered for her failure to do so. She, therefore, having had opportunity to defend and defeat her husband's charges before judgment, and having failed without sufficient reason or excuse to do so, should not now be heard to complain; and, if her interest were the only

interest at stake, no doubt the trial court would have
.denied the prayer of her petition and held her bound
by the decree; but, in part at least, the judgment of the
trial court is based upon public policy, and the interest
of the public is the only interest which here demands
consideration.   Public policy as to divorce actions has
been defined:

"Marriage is a relation in which the public is deeply
interested and is subject to proper regulation and con-
trol by the state or sovereignty in which it is assumed
or exists.   The public policy relating to marriage is
to foster and protect it, to make it a permanent and
public institution, to encourage the parties to live to-
gether and to prevent separation.   This policy finds
expression in probably every state in this country in
legislative enactments designed to prevent the sunder-
ing of the marriage ties for slight or trivial causes, or
by the agreement of the husband and wife, or in any
case except on full and satisfactory proof of such facts
as by the legislature have been declared to be cause
for divorce.   Such provisions find their justification
only in this well-recognized interest of the state in the
permanency of the marriage relation."   9 R. C. L.,
p. 252.

And in *Faulkner v. Faulkner,* 90 Wash. 74, 155 Pac.
404, it was said:

"The real question then is, should the court have set
the decree aside when the fact appeared because of
the public interest.  That it has such power may be con-
ceded, and perhaps, if the fact timely appeared, it
might be its duty to do so.   But when the fact is made
to appear after the right of appeal has expired, the
court may be confronted with conflicting public in-
terests, and a duty to determine the course which will
best promote such interests.   In other words, the mat-
ter becomes one of discretion with the court to be re-
viewed on appeal only when such discretion is abused."

In furtherance of this public policy, as it is thus de-
fined, much discretion must be vested in the trial

courts, and when, as here, the application is made almost instantly and the condition of the parties has not changed, and the trial court, after hearing and seeing the parties and their witnesses, is of the opinion that public policy requires that the decree be set aside and the party complaining be allowed to defend, we are not inclined to interfere. Indeed, in view of the state's interest, the *nisi prius* judges should be encouraged to exercise sound discretion in all such cases, to the end that divorces be not granted "except on full and satisfactory proof of such facts as by the legislature have been declared to be cause for divorce." 9 R. C. L., *supra.*

The judgment appealed from is affirmed.

HOLCOMB, MOUNT, MITCHELL, BRIDGES, and FULLERTON, JJ., concur.