[No. 18186.    *En Banc.*    February 28, 1924.]

## THE STATE OF WASHINGTON, *on the Relation of Mabel E. Morris, Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *Respondent.*[1]

DIVORCE (44)—INTERLOCUTORY ORDER—CONCLUSIVENESS—RIGHT TO FINAL DECREE—ESTOPPEL—JURISDICTION OF COURT—STATUTES. Rem. Comp. Stat., § 988-1, providing that, six months after an interlocutory order granting a divorce, the court, on motion of either party, "shall confirm such order and enter final judgment," does not require the court to grant the motion in case a reconciliation has taken place, as the order is *res adjudicata* only as to the right to a divorce at the time it was entered; and where the motion is resisted, on an allegation of reconciliation and a resumption of marital relations, the court has jurisdiction to hear and decide that matter on the merits.

Application filed in the supreme court August 22, 1923, for a writ of mandamus to compel the superior court for Pierce county, Chapman, J., to enter a final decree of divorce. Denied.

*Remann & Gordon,* for plaintiff.

*H. H. Johnston,* for respondent.

PARKER, J.—This is an original application of the relator, Mabel E. Morris, in this court for a writ of mandate to compel the superior court for Pierce county to enter a final decree of divorce in her favor in an action commenced and prosecuted in that court by her against her husband, L. R. Morris, in which action an interlocutory order was entered determining her to be entitled to a decree of divorce, more than six months prior to the commencement of this proceeding; no appeal having been taken from the entering of that interlocutory order.

[1]Reported in 223 Pac. 583.

The controlling facts may be summarized as follows: Upon the expiration of the six months' period prescribed by the statute, presently to be noticed, following the entry of the interlocutory order determining the relator to be entitled to a decree of divorce, she, by her counsel, applied to the court for a final decree of divorce. At the same time her husband, by his counsel, appeared in court resisting the entry of such a final decree, alleging in substance as ground therefor that he and the relator had, since the entry of the interlocutory order, resumed their marriage relations with the mutual understanding that the divorce proceeding should be terminated and no final decree entered therein. This was alleged in his affidavit then filed and was controverted in her affidavit then filed, though her counsel, by appropriate motion to strike his affidavit, insisted that such an issue of fact was not triable by the court incident to the question of the entry of a final decree of divorce after the entry of the interlocutory order determining that she was entitled to a divorce. The trial court denied the relator's motion to strike the affidavit of her husband and set the cause down for hearing upon the issues raised by the respective affidavits of the parties, to which counsel for the relator duly excepted, and thereafter, before the date set for such hearing, commenced this mandamus proceeding to compel the entry of a final decree of divorce in her favor.

The provisions of our divorce statutes here to be noticed, referring to sections of Remington's Compiled Statutes, are as follows:

" . . . at the conclusion of the trial the court must make and file findings of fact and conclusions of law. If it determines that no divorce shall be granted final judgment must thereupon be entered accordingly. If, however, the court determines that

either party, or both, is entitled to a divorce an interlocutory order must be entered accordingly, declaring that the party in whose favor the court decides is entitled to a decree of divorce as hereinafter provided; which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, which order as to the custody, management and division of property shall be final and conclusive upon the parties subject only to the right of appeal; but in no case shall such interlocutory order be considered or construed to have the effect of dissolving the marriage of the parties to the action, or of granting a divorce, until final judgment is entered: . . . " [Rem. Comp. Stat., § 988.]

"At any time after six months have expired, after the entry of such interlocutory order, and upon the conclusion of an appeal, if taken therefrom, the court, on motion of either party, shall confirm such order and enter a final judgment granting an absolute divorce, from which no appeal shall lie." [Rem. Comp. Stat., § 988-1.]

It is strenuously contended in behalf of the relator that upon the expiration of the six months' period prescribed by Rem. Comp. Stat., § 988-1 [P. C. § 7507a], above quoted, there being no appeal working an extension of that period, she became entitled, as a matter of absolute right, to have a final divorce decree entered in her favor in conformity with the interlocutory order, regardless of any intervening, occurring fact, and that the trial court's duty to enter a final decree of divorce in her favor is in substance ministerial. The logic of this contention, in its final analysis, is that nothing new can arise having any effect in the nature of an estoppel or otherwise as against the right of the relator to have such final decree entered at this time. A literal reading of § 988-1 is relied upon and *res judicata* invoked in the relator's behalf as against her husband. Now it must be con-

ceded that the interlocutory order is *res judicata* of the question of the relator being entitled to a decree of divorce, in so far as facts existing at the time of the entry of the interlocutory order could have any influence upon its making. In other words, that order is a final adjudication that the relator, upon the facts then existing, is entitled to a decree of divorce as against her husband; yet that order is not a final decree dissolving the marriage relation between relator and her husband. Section 988, Rem. Comp. Stat. [P. C. § 7507], above quoted from, expressly so provides.

It is not necessary here to attempt a statement of any general rule applicable to all cases as to what new facts occurring after the entry of the interlocutory order will have the effect, in the nature of estoppel or otherwise, of preventing one or other of the parties from successfully asserting his or her right to a final decree of divorce upon the expiration of the statutory period following the entry of the interlocutory order; but surely we are safe in saying that a resumption of the marriage relations, attended by such an agreement and understanding as is here alleged by the husband, ought to be held sufficient to warrant the trial court in making inquiry with reference thereto by receiving and hearing proof in behalf of the respective parties and awarding or denying a final decree as the facts and circumstances may warrant. In other words, if there has been such a reconciliation as is alleged by the husband in his affidavit in this case, we think the trial court would be warranted in refusing to enter a final decree in favor of either the wife or husband. If this be not a sound rule, then, after the entry of an interlocutory order determining that one or other of the parties is entitled to a divorce, their marriage relations might be resumed and continued for any num-

ber of years, with the absolute right remaining in either of them to at any time have a final decree of divorce dissolving their marriage relations. We do not think that the provisions of § 988-1, above quoted, express a legislative intent such as will preclude the courts from recognizing a reconciliation of the parties accompanied by an agreement between them to terminate the divorce proceeding without the entry of a final decree, and for that reason refusing to enter such a decree. We are not without authority in support of this conclusion, although the decisions of the courts touching the question are comparatively few.

The supreme court of California, in *Olson v. Superior Court*, 175 Cal. 250, 165 Pac. 706, 1 A. L. R. 1589, rendered a decision which seems to us in its reasoning to be directly in point. In that case an interlocutory judgment was entered after a trial, determining the wife to be entitled to a decree of divorce. Thereafter, before the entering of a final decree of divorce, the parties became reconciled and lived together for several years, when the husband attempted to procure the entry of a final decree of divorce, claiming the absolute right to have such a decree entered in conformity with the interlocutory judgment. The trial court refusing the entry of the decree, application for writ of mandate to compel such entry was made to the supreme court. In disposing of the case, Justice Henshaw, speaking for the court, said:

"Petitioner's contention is that under the facts above narrated the trial court has no discretionary power by virtue of the mandatory provision of section 132 of the Civil Code. That section declares that: 'When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce.'

"That the word 'may,' as thus employed in the statute, means 'must,' whenever the facts are shown entitling the movant to such final decree, requires no discussion. Petitioner's argument is based upon the proposition that, when one year has in fact elapsed, the right is absolutely final and the trial court is without the slightest discretion in the matter of withholding the relief sought.

"The question is one of first impression in this state, but in our view is one exceedingly easy of solution. Under our divorce laws the interlocutory decree fixes the right of the blameless spouse to a decree of divorce as and of the time when the interlocutory decree itself is given. Barring the familiar equitable considerations of fraud or mistake in the procurement of this decree, all matters therein litigated have passed beyond the possibility of future litigation; but it is never to be forgotten that the interlocutory decree does not sever the marital bonds. It is merely a declaration that one of the spouses has at that time established a right to a final decree which will be entered at and after the expiration of one year. *Estate of Dargie,* 162 Cal. 51, 121 Pac. 320.

"What ends has the law in view in enforcing the delay of one year before an absolute severance of the marriage ties? This question, too, has been answered by our decisions, and it is truly declared to be one of the important purposes of the law, to give the spouses a chance to effect a reconciliation, which the law always favors. *Barron v. Barron,* 7 Cal. Unrep. 347, 96 Pac. 273.

"The facts presented show that one of the great purposes of our law had been fulfilled. Before the time when the final decree could have been entered the wife condoned her husband's offense and they became reconciled. They lived together as husband and wife continuously for five years thereafter, at the end of which time the condonee, not the condoner, demands of the court the entry of the final decree, severing the bonds of matrimony between himself and his wife with whom he had thus been living. From its very nature the interlocutory decree can only operate upon facts

existing down to the time it is given. It is within the contemplation of the law that facts subsequently arising should have their influence in determining the right to a final decree. While in every proper case a trial court will, and, if necessary, by mandate will be compelled to, enter such a final decree, it would be a grave reproach to our jurisprudence to hold that our law ever contemplated that such a decree could be forced upon a blameless and nonconsenting wife after such a reconciliation. Our law demands no such thing. It never designed to make itself an instrument of such frauds. The similar law in the state of New York entitles either spouse to a final judgment after three months, 'unless for sufficient cause the court in the meantime shall have otherwise ordered,' and under that statute the court refused a final decree where a reconciliation was effected such as is here shown. *Cary v. Cary,* 144 App. Div. 846, 129 N. Y. Supp. 444. But in the absence from our statute of this express language found in that of New York the power of our courts is no different. The New York statute but expressed the power which our courts in equity inherently possess. They have, under our present statute and without express authorization, the power to recognize condonations and reconciliations such as are here shown, and to do justice to the litigants as may be demanded by such events in their lives as have arisen subsequent to the entry of the interlocutory decree and before the expiration of the fixed period of one year.

"It would in our view be superfluous to elaborate upon a proposition so plainly consonant with the principles of equity and the due administration of justice. Wherefore the writ is discharged."

We have thus quoted at length from that decision because of what we conceive to be the unanswerable argument therein contained. No decision has come to our notice holding a contrary view. We note that the continued resumption of the marriage relation there in question covered a period of five years, as compared

with the short period here in question; but that is only
a difference which may suggest the necessity of a
closer scrutiny of the proof on the question of recon-
ciliation in this case.   We also note that the word
"may" appears in the California statute rather than
the word "shall" which appears in § 988-1, above
quoted.   But the California court proceeded upon the
theory that the word "may" in their statute meant
"shall;" so, as construed by the California court, their
statute means in substance the same as ours.   We also
note that, in that case it was the condonee, not the con-
donor, who was asking that the final decree of divorce
be entered; but again we say that fact is to our minds
only a difference which may suggest the necessity of
closer scrutiny of the proof on the question of effective
reconciliation in this case.   Manifestly, a reconciliation
can be sufficiently effectual as to estop either party
from claiming the right to have a final decree of di-
vorce entered, though possibly the courts might be in-
clined to look with more favor on the condonor than
the condonee in determining such question.

We are not deciding now that the husband, L. R.
Morris, has, as a matter of fact, good cause for resist-
ing the entry of the final decree sought by the relator.
We are simply holding that the issue tendered by him
in his affidavit invokes the jurisdiction and discretion
of the trial court to determine the question of fact as
to whether or not there has been such a reconciliation
as to warrant the refusal of the entry of a final decree
of divorce as sought by the relator; and, being of the
opinion that the superior court has jurisdiction to
make such inquiry and decide the question so pre-
sented, we conclude that it should not be prevented
from doing so.   Observations made in our recent deci-
sions in *In re Martin's Estate,* 127 Wash. 44, 219

Pac. 838, and *Kempf v. Kempf, ante* p. 228, 222 Pac. 485, while not directly in point here, are in harmony with and lend support to the conclusion we here reach.

The application for the writ is denied.

MAIN, C. J., FULLERTON, HOLCOMB, TOLMAN, BRIDGES, and PEMBERTON, JJ., concur.