[No. 21191.    Department Two.    July 31, 1928.]

ELBE R. SMITH, *Respondent*, v. ELMER RUSSELL SMITH, *Appellant*.[1]

[1] DIVORCE (44)—INTERLOCUTORY ORDER—RIGHT TO FINAL DECREE—JURISDICTION OF COURT—STATUTES. Under Rem. Comp. Stat., § 988-1, providing that, six months after an interlocutory decree, the court, on motion of either party, "shall confirm such order and enter final judgment" does not require entry of the order by the court, which has jurisdiction to inquire into matters occuring since the decree, and deny the divorce for sufficient cause.

[2] COURTS (32)—RULES OF COURT—OPERATION AND EFFECT. One making a false affidavit to secure a final decree of divorce under a rule of court requiring an affidavit can not, after securing the decree through such false affidavit, assert the invalidity of the proceedings by reason of the unconstitutionality of the rule requiring the affidavit.

[3] DIVORCE (47-1)—JUDGMENT (115)—VACATING—FRAUD—PERJURY OR FALSE TESTIMONY. The vacation of a final decree of divorce, procured ex parte by fraud on the court and a false affidavit that the parties had not cohabited since the entry of the inter-locutory decree, can not be defeated on the ground that false testimony is not ground for the vacation of a judgment; since the judgment was not founded on false testimony at the trial, but obtained by extrinsic fraud after the trial.

[4] DIVORCE (47-1)—VACATION—FRAUD. The courts have jurisdiction to vacate a decree of divorce procured by fraud since the Act of 1921 became effective; and the making, on ex parte ap-

[1]Reported in 269 Pac. 821.

plication, of a false affidavit that the parties had not cohabited since the interlocutory decree, constitutes fraud on the court, warranting a vacation of the decree.

[5] DIVORCE (47)—VACATING—INTERLOCUTORY DECREE—SUBSEQUENT COHABITATION. Cohabitation and openly living together as man and wife, continued for some time after the granting of an interlocutory decree of divorce, is sufficient ground for vacating a final decree procured by fraud and denying a divorce; and a party guilty of cruel treatment since the interlocutory decree can not urge his own wrong as ground for granting a final decree.

Appeal from a judgment of the superior court for King county, Leavy, J., entered December 17, 1927, upon findings in favor of the plaintiff, setting aside a final decree of divorce.

*McKinney & Crehan* and *Cameron Sherwood*, for appellant.

*Winter S. Martin, Arthur Collett, Jr.*, and *Elledge R. Penland*, for respondent.

BEALS, J.—This is an appeal from a decree, entered on petition of respondent, setting aside a final decree of divorce granted *ex parte* on appellant's motion.

In April, 1923, plaintiff filed a complaint asking for a decree of divorce and for a settlement of the property rights of herself and defendant. She was granted an interlocutory decree May 15, 1923, and nothing further was done in the case until August 8, 1927, on which date defendant filed his affidavit, sworn to August 6, 1927, in which he stated that

"   .  .  .   since the entry of the interlocutory decree and order in this cause, this defendant has not lived with or cohabited with the plaintiff, and affiant knows of no reason why a final decree should not be issued at this time."

Based upon this affidavit, the court granted defendant's motion, and on August 8, 1927, entered a final

decree of divorce. On August 13, plaintiff filed her verified petition alleging that defendant's affidavit stating that she and defendant had not lived together or cohabited since the granting of the interlocutory decree was false, in that, shortly after the granting of the interlocutory order, she and defendant had resumed the marital relation and lived together as husband and wife during much of the time between June, 1923, and June, 1926. Plaintiff in her petition prayed, *inter alia,* that the final decree of divorce be set aside on the ground of fraud practiced by defendant in procuring the same.

The matter came on regularly for trial upon plaintiff's petition, affidavits were filed, witnesses were sworn and much testimony taken. After a full hearing, on December 17, 1927, the court entered its decree reciting

"   .   .   .   that the affidavit filed on August 8, 1927, for the purpose of procuring the entry of final decree, was false in all the essential and material parts thereof, and that a fraud was practiced on the court in that it was not true, as stated therein, that the parties had not lived together and had not cohabited with each other since the entry of the interlocutory decree, and the court, having found that plaintiff and defendant had lived together and had assumed the marital relation subsequent to the entry of the interlocutory decree,"

proceeded to set aside and annul the final decree of divorce entered August 8, 1927. From the entry of the decree of annulment, defendant appeals.

Appellant contends that the evidence was insufficient to justify the decree of the court, and that the same was against the law. The testimony is voluminous and conflicting; the trial court devoted almost three days to the trial, and had the advantage of hearing and observing the witnesses, which placed that

court in a much better position to pass upon the many disputed questions of fact than are we. In our opinion, the evidence does not preponderate against the finding of the superior court to the effect that, after the entry of the interlocutory order, the parties resumed the marital relation and for some time lived together as husband and wife. We accordingly adopt that finding, and, with that as a basis, first proceed to consider the questions of law urged by appellant as ground for the reversal of the decree vacating the final decree of divorce.

[1] Rem. Comp. Stat., § 988-1 reads as follows:

"At any time after six months have expired, after the entry of such interlocutory order, and upon the conclusion of an appeal, if taken therefrom, the court, on motion of either party, shall confirm such order and enter a final judgment granting an absolute divorce, from which no appeal shall lie;"

and appellant contends that the wording of this section makes the granting of the final decree of divorce mandatory, after the expiration of six months from the entry of the interlucutory order, or upon the termination of an appeal therefrom, on motion of either party. We cannot assent to this proposition, and this court has already ruled against this contention of appellant's counsel. In the case of *State ex rel. Morris v. Superior Court,* 128 Wash. 496, 223 Pac. 583, a case in which the relator filed in this court an original application for a writ of mandate to compel the superior court to enter a final decree of divorce, this court, sitting *En Banc,* held that, while the interlocutory order is *res judicata,* in so far as the same determines that, at the time the order was entered, one party to the action was entitled to a decree of divorce, yet that order does not dissolve the marriage relation between the parties to

.the action, and that, upon application by either party for the entry of a final decree of divorce, the court may inquire as to matters which have occurred since the entry of the interlocutory order and determine whether or not a final decree of divorce should be entered.

In its opinion, this court quotes with approval from the opinion of the supreme court of California in the case of *Olson v. Superior Court,* 175 Cal. 250, 165 Pac. 706, 1 A. L. R. 1589, in which that court construed the statute of California providing for the entry of a final decree of divorce (which statute, as construed by the supreme court of California, is practically the same as that of this state) and held that the court had the right, at the time of the making of· an application for a final decree, to examine into all relevant matters and determine whether or not the same should be granted. This case was decided June 1, 1917, prior to the enactment of the present law of this state, which closely follows the law of California governing the entry of decrees of divorce, and the opinion of the California court was given great weight by this court in construing the law of this state, as indicated in the opinion in the case of *State ex rel. Morris v. Superior Court, supra.* It is now established beyond question as the law of this state that, at the time application is made for a final decree of divorce, the court may inquire into all the circumstances surrounding the particular case in which the application is made, and grant or deny the application after such proceedings as the court deems adequate.

[2] Appellant attacks the validity of Rule V of the Rules of the Superior Court which requires the filing of an affidavit by the party applying for a final decree of divorce, stating that, since the entry of the interlocutory order, the parties have not lived together.

Appellant assumed the burden of complying with this rule and made and filed his affidavit deposing that, since the entry of the interlocutory order, he had not lived with or cohabited with the plaintiff. Assuming, though not deciding, that Rule V is invalid in so far as it requires the filing of such an affidavit as a condition precedent to the granting of a decree of final divorce, the superior court, in considering appellant's motion for the entry of a final decree, had the right to demand from appellant some showing in support of his motion, and evidently considered appellant's affidavit, in which appellant swore that the parties had not lived together or cohabited since the entry of the interlocutory order, as a sufficient showing to justify the entry of the final decree of divorce, and relying upon appellant's affidavit and on his motion, entered the decree.

Appellant now contends that, even assuming that he committed perjury in making this affidavit and that the facts were otherwise, this did not justify the superior court, after the hearing upon respondent's petition to vacate the final decree of divorce, in entering the decree appealed from, vacating the final decree. The law does not provide for notice of the application for the entry of the final decree of divorce, but provides that the same may be entered on motion of either party after the period fixed by law has elapsed since the entry of the interlocutory order; the hearing may be *ex parte* and without any participation therein by the opposing party, and the court, in its discretion, may consider a showing by affidavit, such as was made in this case, sufficient to justify the entry of the final decree. To say that a party to a divorce action may induce the court to enter a final decree, relying upon his *ex parte* affidavit, and then later, at a hearing on a petition to vacate the

decree so entered, blandly admit that his affidavit was utterly false, but contend that the decree entered in reliance thereon cannot be vacated, is to place such a premium upon the commission of perjury as cannot be tolerated.

[3] The cases cited by counsel for appellant, holding that a judgment will not be vacated because based in part upon perjured testimony, are not in point, as manifestly there exist here those extrinsic or collateral facts constituting fraud which take the case without the rule laid down in the cases referred to. One underlying principle of those cases is that the judgment or decree sought to be vacated was entered after a full hearing, at which both parties either were, or should have been, after lawful service of process, represented, and an opportunity afforded to establish the truth, either by cross-examination of the witnesses who were swearing falsely or by introducing evidence to contradict their testimony. After such a hearing, it is entirely proper to hold that the order of the court must stand, even though based in part upon perjured testimony, as otherwise judgments might never become final, for, as said by this court in the case of *Meeker v. Waddle,* 83 Wash. 628, 145 Pac. 967:

"The decree which held that a former decree was founded upon perjured testimony might itself later be attacked upon the ground that it was procured by perjured testimony, and so on *ad infinitum.*"

The principle on which the *Meeker* case was decided cannot properly be applied to the entry of a final decree of divorce entered pursuant to the statutes of this state upon the *ex parte* showing of the party applying therefor.

[4] Appellant contends that, under the statutes of this state, the court cannot vacate a decree of divorce, or, at least, that because the court in some cases would

refuse to vacate such a decree, in no case should the court do so. This court has repeatedly held that, under the law of this state in force prior to the act of 1921 [Rem. Comp. Stat. § 988], the court had jurisdiction to vacate a decree of divorce. *Graham v. Graham,* 54 Wash. 70, 102 Pac. 891, 18 Ann. Cas. 999, L. R. A. 1917B 405; *Jarrard v. Jarrard,* 116 Wash. 70, 198 Pac. 741; *Moore v. Moore,* 116 Wash. 701, 198 Pac. 99.

In the case of *Faulkner v. Faulkner,* 90 Wash. 74, 155 Pac. 404, this court affirmed the ruling of the trial court refusing to vacate a decree of divorce on petition of the defendant filed six months and two days after the entry of the decree, the plaintiff in the action having remarried after the expiration of six months from the entry of such decree. It was held that the refusal of the trial court to vacate the divorce was a proper exercise of its discretion and refused to disturb the trial court's ruling. Quoting from the opinion:

"The real question then is, should the court have set the decree aside when the fact appeared because of the public interest. That it has such power may be conceded, and perhaps, if the fact timely appeared, it might be its duty to do so. But when the fact is made to appear after the right of appeal has expired, the court may be confronted with conflicting public interests, and a duty to determine the course which will best promote such interests. In other words, the matter becomes one of discretion with the court, to be reviewed on appeal only when such discretion is abused."

This reasoning applies with equal force to the case now before us where the trial court, in the exercise of its discretion, vacated a decree of divorce theretofore granted, and as far as questions raised on this appeal are concerned, we see no difference between a decree of divorce entered prior to the time the act

of 1921 became effective and one entered pursuant to said act.

The lower court found that these parties had, after the entry of the interlocutory order, resumed the marital relation. This being true, each party was justified in assuming that the divorce action had been abandoned and that the other party shared that assumption and would in good faith act thereon. When appellant, without notice to respondent and without her knowledge, procured *ex parte* a final decree of divorce, he was guilty of such fraud as brings this case within the exceptions mentioned in *Bennington County Sav. Bank v. France,* 111 Wash. 483, 191 Pac. 616, and under the rule laid down by this court in the case of *Rowe v. Silbaugh,* 107 Wash. 518, 182 Pac. 576.

[5] Appellant next contends that the acts of the parties, even assuming that they lived together as husband and wife subsequent to the entry of the interlocutory order, do not constitute sufficient ground for vacating the final decree of divorce, or holding that by their conduct the parties have placed themselves in such a position that no final decree of divorce should be entered. Appellant earnestly insists that the evidence shows that it was not the intention of the parties to perpetuate the marriage relation, or at least if they did so intend, or as counsel says, "if there was any actual condonation," the subsequent cruel treatment of respondent by appellant revived respondent's former cause of action for divorce and justified the entry of the final decree. This latter argument might be urged with some show of reason, if it were respondent, the condonor, who was seeking to maintain the decree of divorce and the appellant, the condonee, who was objecting thereto, but certainly appellant is in no position to contend that because, after the entry of the interlocutory order and after the parties

had resumed the marital relation, he beat and cruelly abused respondent, he can take advantage of his own cruel and wrongful conduct to maintain a decree of divorce, obtained without respondent's knowledge, over respondent's seasonably urged protest.

The trial court found, and we believe that it appears from the preponderance of the testimony, that after the entry of the interlocutory order the parties resumed the marital relation, lived together as husband and wife more or less openly in the city of Seattle and traveled together as husband and wife throughout the states of Washington and Oregon and elsewhere. They thus, by their conduct, mutually estopped themselves from availing themselves of the interlocutory order for the purpose of using it as a basis for a final decree of divorce. An interlocutory order entered in an action for divorce does not dissolve the bonds of matrimony which have previously existed between the parties; they are still husband and wife and remain such until the entry of the final decree. To hold that they can resume the marital relation, as did the parties to this action, maintain the same more or less continuously for a period of three years, and then, even by mutual agreement, separate and procure a final decree of divorce, would be to make a farce of judicial procedure and open the door to fraud and imposition upon innocent and trusting persons which would make the law an instrument of oppression and a trap for the unwary. Such a rule might oftentimes result in intolerable situations, and involve innocent children, creditors in good faith, to say nothing of the parties themselves, in an inextricable confusion that could result in nothing but harm to all concerned. It is true that certain of the rights of the parties are definitely fixed by the interlocutory order, providing nothing subsequently happens to disturb the same. After the

entry of that order, neither one has any right to annoy the other in any manner or force his or her society on the other. If, after the entry of such an order, the parties deliberately resume the marital status, and live together openly as husband and wife, whether or not they wish or intend to do away with the effect of the interlocutory order, the law must assume that they intended the reasonable consequences of their act, and, in our opinion, the only conclusion which can follow is that the action for divorce has been abandoned and the interlocutory order, as the basis for a final decree, wholly done away with.

The superior court of California in *Olson v. Superior Court, supra,* held that one of the important purposes of the law, in fixing a definite period between the entry of the interlocutory order and the final decree of divorce, is to give the spouses an opportunity to effect a reconciliation, which the law always favors. That being true, the marital relation as resumed by the parties after the entry of the interlocutory order should be protected by the court and that beneficent purpose of the law furthered when possible. In this case, the acts of the parties in openly living together as husband and wife would, under the common law, constitute a valid marriage between two persons competent to enter into that relation; while in this state there is no common law marriage, we think that such a state of facts as is here presented must be held to constitute a reestablishment of the existing marriage relation and a complete estoppel against the use of the interlocutory order as the basis for a final decree of divorce.

Decree affirmed.

FULLERTON, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.