[No. 25339. Department Two. December 21, 1934.]

THE STATE OF WASHINGTON, *on the Relation of Single-*
*ton E. Chaudoin, Plaintiff*, v. THE SUPERIOR COURT
FOR KITTITAS COUNTY, ARTHUR McGUIRE,
JUDGE, *Respondent.*[1]

*J. W. Selden,* for relator.

*F. A. Kern,* for respondent.

STEINERT, J.—The relator made application to this court for a writ of mandamus to compel respondent to enter a final decree of divorce in a case pending in the superior court for Kittitas county. An alternative writ was issued, to which respondent made return. The matter is now before us upon the record as made by the application and return thereto.

Relator and Elleanore Chaudoin are husband and wife. They have two children.. The home in which they formerly lived in Puyallup was worth about two thousand dollars. In January, 1931, the husband and wife separated, Mrs. Chaudoin taking the children and going to Ellensburg, Mr. Chaudoin remaining in Puy-

[1]Reported in 39 P. (2d) 388.

allup. On March 22, 1932, Mrs. Chaudoin executed and delivered to relator a quitclaim deed to the Puyallup property, in consideration of which relator claims to have paid his wife about sixteen hundred dollars. After moving to Ellensburg, Mrs. Chaudoin acquired, through gift from her mother, property there, worth about one thousand dollars.

On February 3, 1933, Mrs. Chaudoin began an action for divorce against relator in Kittitas county. In her complaint, she alleged ownership of both properties above mentioned. At the trial of the case on February 14, 1933, she testified that she had executed the deed covering the Puyallup property to relator merely for the purpose of facilitating a sale thereof, but with the understanding that she was not releasing her rights therein. This was denied by relator. At the conclusion of the trial, the court took the case under advisement. While the cause was still under consideration by the court, the parties to the action, through their attorneys, entered into a written stipulation which provided, among other things, that "the court make such disposition of the property of the parties, upon the evidence now before the court, as to the court may appear just and equitable."

On February 25, 1933, while the cause was still under advisement, relator sold the Puyallup property to an innocent purchaser, who paid relator seven hundred and fifty dollars cash and assumed the balance of an existing mortgage. The sale was made without the knowledge of the court and without the consent of either the court or Mrs. Chaudoin. Two days later, February 27, 1933, the court filed its memorandum decision indicating that Mrs. Chaudoin would be awarded an interlocutory decree of divorce, and that the Puyallup property would be given to her in lieu of alimony. Findings, conclusions and interlocutory decree in har-

mony with the memorandum decision were entered on March 6, 1933.

Subsequently, Mrs. Chaudoin instituted an action against the purchaser of the Puyallup property to quiet her title therein. Upon a trial of that case, however, the court held against her, and entered a decree quieting the title to the property in the purchaser. That decree was affirmed by this court in *Chaudoin v. Claypool,* 174 Wash. 608, 25 P. (2d) 1036.

On March 21, 1934, more than a year after the entry of the interlocutory decree, relator filed a motion for final decree of divorce. The motion was resisted by Mrs. Chaudoin, and upon a hearing of the matter, the court denied the motion on the ground of misconduct of the relator in disposing of the Puyallup property after the matter in issue had been submitted to the court for decision and before the court had made any order thereon. This application for mandamus was then made.

The question to be decided here is whether, under the facts and circumstances already narrated, it was mandatory upon the court to enter a final decree of divorce.

Rem. Rev. Stat., § 988-1 [P. C. § 7507 a], reads as follows:

"At any time after six months have expired, after the entry of such interlocutory order, and upon the conclusion of an appeal, if taken therefrom, the court, on motion of either party, shall confirm such order and enter a final judgment granting an absolute divorce, from which no appeal shall lie."

Despite the mandatory language of the statute, it has frequently been held by this court that the statute does not control or limit the court in every case and under all circumstances. In *State ex rel. Harris v. Superior Court,* 144 Wash. 299, 258 Pac. 9, it was held

that a party to a divorce action may not demand a final decree of divorce *as a matter of right* when it is apparent that such party is in contempt for failure to observe the terms of the interlocutory decree entered in the case.

In *State ex rel. Hamlin v. Superior Court,* 148 Wash. 113, 268 Pac. 159, it was held that a husband was not entitled to have a final decree of divorce entered *as a matter of right* where, because of lack of personal service upon him, some material interlocutory question presented by the pleadings remained undetermined, without fault on the part of the other party.

In *Smith v. Smith,* 148 Wash. 457, 269 Pac. 821, it was held that, at the time that application is made for final decree of divorce, the court may inquire into all the circumstances surrounding the particular case in which the application is made, and grant or deny the application after such proceedings as the court deems adequate.

Relator relies upon two cases decided by this court: *State ex rel. Hansen v. Superior Court,* 131 Wash. 13, 228 Pac. 702, and *State ex rel. Cavitt v. Superior Court,* 176 Wash. 528, 30 P. (2d) 229. In the *Hansen* case, it was held that the right of a party to a final decree could not be defeated by a showing that such party had, during the six-months period, contracted a bigamous marriage in another state. But in that very case, the court indicated that the statute was not mandatory *if* a party had, by any act, estopped himself or caused a situation which would make it unfair or inequitable to enforce the statute. In the *Cavitt* case, it was held that a pecuniary inability to pay alimony or support money was a complete defense to a charge of contempt, and did not defeat the right of the party to have a final decree entered. But in that case, it was

also said that a *wilful* failure to comply with the court's order would be contumacious; and further, that a party may not invoke a favorable action of the court when he himself is in contempt in the same proceeding. When applied to the facts in this case, the two cases relied on by relator are of no aid to him.

What is the situation here? Relator appeared in the divorce action and waged a contest over property rights. By stipulation, he specifically invoked the jurisdiction and requested the action of the court to make just and equitable disposition of the property. Then, without the knowledge of the court and without the consent of either the court or the opposing party, and while the matter in issue was still under advisement, relator disposed of the property in such a way as to render the subsequent order of the court wholly nugatory and futile. By his stipulation, he invited the court to undertake the serious and important duty of weighing and determining the rights of the parties. By his act, however, he evidenced his intention to render the court's discharge of its duty as futile as the dropping of a bucket into an empty well.

The wilful disposal of the subject matter of the litigation by a party in a pending action is contempt of court. 13 C. J. 9. The record in this case discloses that relator wilfully disposed of the subject matter of the pending litigation while its disposition was still under consideration by the court. He now seeks to have the court do that which, in effect, would be an approval of his act. It is a familiar maxim of equity that he who comes into a court of equity may not come with unclean hands. Having created a situation which is wholly inequitable and intentionally subversive of the court's solemn adjudication, relator may not now invoke the aid of the court in an attempt to secure favorable action toward himself.

120

The application for peremptory writ of mandamus is denied.

BEALS, C. J., HOLCOMB, and MITCHELL, JJ., concur.

BLAKE, J. (dissenting)—I dissent. The grounds for divorce and the terms upon which a decree may be granted are distinctly within the prerogative of the legislature. While, from the standpoint of public policy, we may well doubt the wisdom of Rem. Rev. Stat., § 988-1 [P. C. § 7507 a], it is not our function to repeal it. That, however, is the effect of the holding in this case. In its salient features, I can see no difference between this case and the cases of *State ex rel. Hansen v. Superior Court,* 131 Wash. 13, 228 Pac. 702, and *State ex rel. Cavitt v. Superior Court,* 176 Wash. 528, 30 P. (2d) 229. Surely, in the absence of a restraining order, it is no more contumacious to dispose of property which is the subject of litigation than it is to contract a bigamous marriage, not only in defiance of the court's decree, but also of positive law making the contract a criminal offense.