[No. 27165.    Department Two.    March 2, 1939.]

LOUISA M. WALKER, *Appellant*, v. JAMES E. WALKER, *Respondent*.[1]

*R. F. Dotsch*, for appellant.

*Thos. L. O'Leary*, for respondent.

[1]Reported in 87 P. (2d) 479.

ROBINSON, J.—This is the fourth action between the parties to this appeal. They were married in 1891, and, after living together for nearly forty years, Mrs. Walker, in August, 1930, brought a suit for divorce, which, after trial, was dismissed. She then brought an action for separate maintenance, which she later voluntarily dismissed. Within a few months after the dismissal of that action, the respondent husband brought an action for divorce (No. 14032, Thurston county), which resulted in an interlocutory decree on February 9, 1932. The final decree was not entered until April 9, 1934. The decree set aside to Mrs. Walker three parcels of real estate known as the "home" farm, the Blass property, and the Auburn property; and to Mr. Walker, the Walker building in Olympia, with some furniture therein, another portion of the farm, and a log dump. All of these properties, except that designated as the "home" farm, were heavily mortgaged.

This action was brought by Mrs. Walker on August 23, 1937, more than three years and four months after the entry of the final divorce decree. Its purpose was to enforce an alleged trust interest in the property known as the "home" farm and the Walker building; and, in case that could not be done, to secure somewhat the same result by having the divorce decree declared null and void, on the ground of fraud in its procurement. The pleadings are long and involved, and no attempt will be made to state them in full.

The substance of the allegations of the complaint are as follows: That, shortly after the entry of the interlocutory decree, the parties agreed to abandon the divorce proceedings and to work the "home" farm for their own subsistence; and that, with the idea of attempting to save some of the mortgaged property, the parties purchased cattle, assumed their marital rela-

tions in every respect, and by their joint efforts conducted the farm as a stock farm until July 26, 1937.

That, it being thought advisable to have the real property in Mr. Walker's name, Mrs. Walker deeded to him, on April 23, 1932, the "home" farm and the Blass property, upon an agreement that he should hold it in trust and reconvey her interest on demand. That it was also agreed to deed the Auburn property to the mortgagee to avoid foreclosure and to concentrate on saving the Walker building.

In the early part of 1933, the mortgage on the Blass property being overdue, the parties decided to attempt to procure a Federal loan; and, to that end, Mrs. Walker moved into a cottage on that property, returning to the "home" farm for a few days at a time to cook, clean house, and do the family washing. That, in the latter part of 1933, or early in 1934, all the cattle, except one heifer, were sold to meet overdue payments on the Walker building. More cattle were later secured, and the parties lived on the proceeds of the farm until Walker left in July, 1937. That, on March 26, 1934, Mrs. Walker went to the "home" farm for a few days and, upon her return to the Blass cottage, found a notice under her door that Walker was applying for a final decree of divorce in cause No. 14032. Plaintiff consulted an attorney and was advised that the husband could not get a final decree, and was advised by Walker himself, on one of her regular trips to the "home" farm on about the 7th or 8th day of April, that "there was nothing to it." Nevertheless, she learned, on the 9th of April, 1934, that the final decree had in fact been entered. That she went to the "home" farm and protested, and was told by Walker that she would always have her share as if she had never been divorced, and that he would always support and take care of her.

That, after the entry of the final decree, there was no change made in the mode of living, and, by great self-denial and their joint efforts, the encumbrance on the Walker building was reduced from $27,000, principal, to $14,000, and that the building, at the time of the suit, returned a net income of approximately one hundred dollars per month. That, after the entry of the final decree, the plaintiff was lulled into security by defendant's promises, their continued cohabitation, and their mutual efforts to live frugally in order to reduce the encumbrance on the Walker building, and by such representations as that the farm would shortly be rented and that they would then move into Olympia and operate the building, and that all such representations were believed until defendant deserted the plaintiff in July, 1937, and asserted that he never intended to return or to maintain or support her.

It is further alleged that, whether the divorce be declared wholly void or not, "plaintiff and defendant cannot and will not assume their former relations and status."

The answer is long and involved, but its salient points are: That the defendant purchased the livestock with money personally borrowed; that the plaintiff deeded the "home" farm and the Blass property to defendant because she was engaged in litigation which she feared might result in a judgment lien upon it; that the divorce decree provided that the community debts, amounting to $1,272.58, should be paid, one-half by plaintiff and one-half by defendant, and, if either paid more than one-half thereof, there should be a lien for the overplus on the property of the other; that defendant had paid the entire sum, except one hundred dollars; that he had reconveyed the Blass property to the plaintiff and was willing to convey the "home" place upon receiving from her the sum of

$536.29, or upon such terms as the court might prescribe. The answer admitted the sale of the livestock, but alleged that the proceeds were used to pay back their borrowed purchase price.

The defendant admitted that the encumbrance on the Walker building had been reduced to $14,500, although in part by two thousand dollars of prepaid rent, and alleged that such entire reduction was made solely out of income from the building. Throughout the answer, the plaintiff's allegations as to cohabitation after the entry of the interlocutory decree and all related allegations were denied. The alleged agreement to drop the proceedings was denied. There were some minor details and affirmations which it is not necessary to recite. The defendant affirmatively pleaded laches and the statute of limitations. By reply, the plaintiff denied, substantially, all the affirmative allegations of the answer.

The trial judge found with the defendant on substantially all the disputed questions of fact, and, in particular, that the farm had been stocked at defendant's own expense; that the defendant had paid the community debt, as alleged, and that none of the money produced by the operation of the farm had gone into the Walker building, the encumbrance having been reduced by its own earnings. The trial court, however, made no finding at all as to the allegations relied upon by plaintiff to show the commission of a fraud upon her in the entry of the final decree of divorce, presumably because he thought that matter immaterial, having concluded at the end of the trial that, since Mrs. Walker admitted that she had full knowledge of all the facts, notice of the application for the final decree, and of its entry on April 9, 1934, an action to annul the decree on that ground, brought so late as August, 1937, could not be maintained.

The court ordered the defendant to reconvey the "home" farm to the appellant, subject to defendant's lien for $536.29, with respect to money paid to discharge the community debts, the amount to bear interest at six per cent and the lien to be subject to foreclosure, if not discharged by appellant within three years, and directed all further relief, either on the theory of trust or by annulment of the decree, be denied. The judgment is supported by the findings of fact and conclusions of law, none of which we find any adequate reason to disturb.

It was suggested at the hearing that, even if the plaintiff could not maintain the action on the ground of the alleged fraud as against herself, because of laches and the interposition of the plea of the statute of limitations, there was very strong evidence, though contradicted, of continued cohabitation after the entry of the interlocutory decree which would have authorized the court to annul the decree on its own motion and in the public interest. In this connection, it was contended that a finding that the defendant committed a fraud upon the court in procuring the final decree would *ipso facto* render the decree absolutely void. This, however, is not the case. The question as to whether a decree so obtained should be annulled was within the discretion of the court which entered it.

In *Smith v. Smith*, 148 Wash. 457, 269 Pac. 821, the court quoted the following excerpt from its former opinion in the case of *Faulkner v. Faulkner*, 90 Wash. 74, 155 Pac. 404:

" 'The real question then is, should the court have set the decree aside when the fact appeared because of the public interest. That it has such power may be conceded, and perhaps, if the fact timely appeared, it might be its duty to do so. But when the fact is made to appear after the right of appeal has expired, the

court may be confronted with conflicting public interests, and a duty to determine the course which will best promote such interests. In other words, the matter becomes one of discretion with the court, to be reviewed on appeal only when such discretion is abused.' "

That the matter is discretionary is also indicated in the case of *Walker v. Walker*, 151 Wash. 480, 276 Pac. 300.

We must assume that the trial court was cognizant of its inherent power; and that, since it refused to set the divorce decree aside, it either did not find as a fact that a fraud had been committed on the court, or, having so found, concluded that it was not for the public interest to annul the decree. The same judge who entered the divorce decree tried this action. In his refusal to annul that decree, we see no indication of an abuse of discretion. On the contrary, it seems to us that the court's discretion was wisely exercised. In the complaint in this case, it is alleged, in the fourteenth paragraph, "that plaintiff and defendant cannot and will not assume their former relations and status," and the findings are of such a nature as to make it highly improbable that a different property division would be made in another divorce action. Under these circumstances, it would seem that annulment of the decree would be but to remit the parties, who have already waged four suits, to further and fruitless litigation.

The judgment and decree appealed from is affirmed.

BLAKE, C. J., BEALS, MILLARD, and STEINERT, JJ., concur.