[No. 27988. Department Two. September 7, 1940.]

CHARLES R. BURCHFIELD, *Appellant,* v. CHARLOTTE B. BURCHFIELD, *Respondent.*[1]

*McMullen & Snider,* for appellant.

*Schaefer & Hall,* for respondent.

DRIVER, J.—The plaintiff husband brought this action for divorce. The defendant wife cross-complained and, without further contest on the part of the husband, was granted an interlocutory order. The prescribed

[1] Reported in 105 P. (2d) 286.

period of six months having expired, the plaintiff applied for a final decree. The defendant resisted the application and filed an amended answer, in which she alleged, in effect, that, subsequent to the entry of the interlocutory order, she and the plaintiff had agreed to become reconciled, whereupon they cohabited together and resumed the relationship of husband and wife. The court, after hearing the issue thus framed, filed a memorandum decision and entered an order denying the plaintiff's application for final decree. The plaintiff has appealed.

The undisputed evidence adduced at the hearing was, in substance, as follows:

The appellant at all times resided in Vancouver, Washington, where he operated a tavern. The respondent, after the entry of the interlocutory order, remained in Vancouver for several months, then moved to Portland, Oregon, where she engaged in the beauty-parlor business. She had living apartments at the beauty shop, and, within her first week at this new residence, appellant spent a night with her there. For the ensuing period of approximately ten weeks, until they quarreled and finally separated, appellant and respondent were together almost every week end. They visited near-by beach and mountain resorts, leaving Portland late Saturday night and returning the following Monday morning. On such occasions, they occupied the same hotel room, registered as husband and wife, and indulged in sexual intercourse.

During this time, appellant gave respondent an electric refrigerator and other gifts of merchandise and money, amounting, in the aggregate, to about four hundred dollars more than he was required to contribute to her by the terms of the interlocutory order. On at least one occasion, appellant sent flowers to the respondent.

The court also found, in its memorandum decision, on conflicting testimony, that the respondent was led to believe, by the appellant's conduct and by representations and promises which he made to her, that a reconciliation had been effected between them; and that appellant would soon come to reside with her permanently. The record supports such finding.

The sole question presented by appellant's assignments of error is this: Was the conduct of the parties, after the entry of the interlocutory order, such as to justify the denial of appellant's application for a final decree?

▇ Appellant calls attention to the following paragraph of Rule V of the General Rules of the Superior Courts, as set out in 193 Washington Reports, page 57-a:

"No application for a final decree of divorce shall be granted except upon verified petition or motion therefor, supported by affidavit of the applicant filed in the cause, and after it shall have been made to appear to the satisfaction of the court that the parties have not *resumed the marital relation* since the granting of the interlocutory decree of divorce." (Italics ours.)

Appellant then argues that this court, in some of its decisions, has indicated it considers the phrase "resume the marital relation" to be synonymous with "cohabit"; that the word "cohabit," as defined by a number of authorities which he cites (particularly *O'Malley v. O'Malley,* 46 Mont. 549, 129 Pac. 501, Ann. Cas. 1914B, 662; *In re Miller's Estate,* 182 Okla. 534, 78 P. (2d) 819; and *State v. Gieseke,* 125 Minn. 497, 147 N. W. 663), necessarily imports "a dwelling together, continuously and publicly, and with some degree of permanency"; that, in the case at bar, the appellant and the respondent did not so live together or cohabit, therefore did not resume the marital relation, and appel-

lant's application for a final decree should have been granted.

In each of the first two cases cited by appellant, the question involved was whether or not the acts of a man and a woman constituted cohabitation, as that word is used in connection with informal, unsanctified marriage, or, as it is generally called, "common-law marriage." In the third cited case, the defendant was charged with violation of a statute making it a crime for "any man and a single woman" to cohabit together.

The definitions of "cohabit" appearing in such cases are not applicable to the present case, which involves an entirely different subject matter.

"The word [cohabit] is of large and flexible signification, having several meanings, depending on the ideas which accompany its use, and the subject to which it is applied, so that in order to give it proper effect in any given case regard must be had to the subject matter to which it relates, to the situation and conditions in respect of which it is used, and to the explanatory and qualifying language accompanying it." 14 C. J. S. 1311.

On the other hand, in *Thorp v. Thorp,* 165 Wash. 255, 4 P. (2d) 1103, a case in which the question under consideration was practically the same as that in the case at bar, this court used the word "cohabit" to signify sexual relations between spouses on an occasion when they spent only one night together. See, also, *Walker v. Walker,* 151 Wash. 480, 276 Pac. 300, where it was said, in a case involving similar circumstances, that the spouses "cohabited sporadically."

While this court has not attempted to precisely define "resumed the marital relation" as used in Superior Court Rule V, it has construed and applied the phrase as not necessarily implying cohabitation in the sense of appellant's definition, namely, that the spouses have publicly and continuously lived together as husband

and wife with some measure of permanency. In *Walker v. Walker, supra,* the trial court found that the spouses had not become reconciled and had not resumed marital relations, other than that they "cohabited sporadically" after the entry of the interlocutory order. This court held such a finding to be sufficient to warrant the vacation of the final decree of divorce.

In *Thorp v. Thorp, supra,* the only resumption of the marital relation was that the wife, upon the husband's representation that he desired a reconciliation, spent the night with him on three different occasions, at intervals extending over a period of six or seven weeks. It was held that this justified vacation of the final decree, which had previously been entered upon the application of the husband.

An important purpose of the law in enforcing a delay of a stated period of time following the entry of the interlocutory order before the final decree of divorce will be granted, is to give the spouses time and opportunity to compose their differences and effect a reconciliation, a consummation which is definitely in furtherance of the public interest. 17 Am. Jur. 362, § 435; *Olson v. Superior Court,* 175 Cal. 250, 165 Pac. 706, 1 A. L. R. 1589; *Lane v. Superior Court,* 104 Cal. App. 340, 285 Pac. 860; *State ex rel. Morris v. Superior Court,* 128 Wash. 496, 223 Pac. 583; *Smith v. Smith,* 148 Wash. 457, 269 Pac. 821.

It seems apparent that the paragraph of Rule V quoted *supra,* was designed to give effect to this purpose of the law by requiring the party seeking entry of the final decree in a divorce action to make a showing sufficient to satisfy the trial court that the spouses have not become reconciled and resumed the marital relation since the entry of the interlocutory order.

A clear and concise statement of the meaning of the

phrase "resumed the marital relation," as it should be applied in the case at bar, is set forth in the following quotation from the memorandum decision of the learned trial court:

"From all the acts, conduct and practices of the parties the court is to determine whether there was a real intent, carried into execution, to resume the relations of husband and wife. If that can be found, then the final decree should be denied, since the parties should not be at liberty to change their minds a second time, and proceed on the basis of the action when it has once been abandoned by an actual resumption of the marital relations."

The respondent operated her own business in Portland, while appellant carried on a different business in another city, and each of them found it necessary to maintain a separate home. Under such circumstances, by spending practically every week end together, as they did, they resumed the marital relation; or, it might even be said, they "cohabited" together in every sense of the word to the fullest extent that would be possible for spouses so situated.

The judgment is affirmed.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.

MILLARD, J. (dissenting)—With the holiness of the matrimonial state, temporal courts have no concern. If the parties are willing and able to contract themselves in marriage and actually do contract, in the manner required by the statute, the marriage is valid; the law treats that status as it does other contracts. The parties' indulgence in sexual intercourse, and the acceptance of gifts by one from the other, during the courtship period, would not constitute an *assumption* of the *marital relationship;* they would not thereby become husband and wife. 1 Cooley's Blackstone (4th ed.), chapter 15.

I cannot understand how it can logically be held that the associating together in meretricious relations or simply for the gratification of the sexual passions during the six-months' interlocutory period is a *resumption* of the marital relationship. Concupiscence during the courtship period is not an assumption of the marital relationship. Neither is sexual congress of the parties during the statutory reconciliation period of six months a resumption of the marital relationship. There was not that residing together of appellant and respondent as husband and wife which the statute contemplates as a resumption of the marital relationship.