**JELM, Plaintiff-Appellant, v. JELM, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21547. Decided February 27, 1950.

Klein & Diehm, Cleveland, F. H. Gillen, Akron, for plaintiff-appellant.

C. M. Myers, Akron, for defendant-appellee.

## OPINION

By HURD, J:

This cause is in this court on plaintiff's appeal on questions of law from the judgment of the Common Pleas Court of Cuyahoga County. The parties will be referred to as plaintiff and defendant as they appeared therein.

The parties hereto were married September 26, 1942 and at the time a default decree of divorce was entered in favor of the plaintiff there had been three children born of said marriage, a fourth child being born May 30, 1948, after entry of the divorce decree.

The defendant on Oct. 14, 1948, filed his petition in the within action after term, to vacate a decree of divorce on the ground of fraud practiced by plaintiff in obtaining a decree of divorce on the 6th day of March during the January, 1948, term of said court.

By journal entry dated April 12, 1949, the trial court vacated the decree of divorce on the ground of fraud, granted leave to defendant to file an answer tendered by defendant which on its face stated a valid defense, and then as a part of the decree stayed and suspended the operation thereof pending the determination of proceedings on appeal upon the condition that during the proceedings on appeal the plaintiff should not live with one Jack Helbig with whom she had contracted a ceremonial marriage Oct. 5, 1948 and should not in the meantime hold herself out to the public as his wife.

We have carefully examined the record to determine whether or not the evidence was clear and convincing in support of the allegations of the petition to vacate on the ground of fraud and have concluded that the evidence supports the findings of fact of the trial court by the requisite degree of proof.

On Sept. 6, 1947, plaintiff filed suit for divorce in Cuyahoga County. The sheriff of Cuyahoga County returned the summons endorsed "the within defendant not found in my county." Thereafter on Oct. 2, 1947, a precipe with alias summons was issued to the sheriff of Summit County and on the 4th day of October, personal service was had on defendant in Akron, Summit County, Ohio, as appears by the sheriff's return.

A written agreement had been entered into by the parties August 2, 1947, slightly modified on Oct. 6, 1947, wherein it was stated in part that "such differences have arisen between them that first party (plaintiff) is contemplating the bringing of a proceedings for divorce against second party (defendant)." By the terms of said agreement it was provided, among other things, that if a divorce should be granted, the property matters and custody of the children of the parties would be governed by the terms of the agreement and in the event of the granting of a divorce the terms should become a part of the decree.

The record shows that on the night of Oct. 18, 1947, plaintiff called her husband at Boston, Massachusetts, from Cleveland, Ohio, and advised him that she was pregnant with her fourth child. By a strange coincidence, the defendant learned on the same night of an occasion in 1946 when his wife, according to her own admissions, set forth at length in the record, had been escorted to a train at the downtown Cleveland Terminal for the purpose of a trip to Boston; that she left the train at the East Cleveland station and met two of her husband's friends, Robert Slusser and Jack Helbig,

the latter of whom was a close friend of defendant and a member of their wedding party. Helbig then drove Slusser and the plaintiff in his father's car to Boston. On the way the party stopped at a hotel where plaintiff and Helbig occupied the same bed and room while Slusser occupied an adjoining room. Having been informed of these facts defendant drove by automobile all night from Boston to Cleveland. Upon his arrival he found his wife and Helbig in their apartment, his wife attired only in her night gown and Helbig who was just getting out of bed and putting on his clothes. No other persons were in the house at the time. Jelm then and there told his wife that under no circumstances would he agree to a divorce nor would he permit her to obtain a divorce.

The record is clear that after the events of October 18 and 19, 1947, above related, the parties after some discussions agreed to live together and thereafter cohabited as husband and wife and thereafter moved into a new home on Bryden Road, Akron, Ohio, which was purchased by them for that purpose. They continued to cohabit as husband and wife for a period of between five and six months after the wife had secretly obtained an uncontested divorce decree in Common Pleas Court of Cuyahoba County.

In relation to this entire period of time of cohabitation as husband and wife, the record shows that the wife deceived her husband in respect of the divorce because, as she testified, she "did not want him to know about it." During the entire time, from the filing of the petition for divorce in September, 1947, to the last of August or first of September, 1948, they mingled socially as husband and wife and continued to live in their home in Akron with their children.

The record is also clear that when the plaintiff obtained her uncontested decree of divorce she did not tell the trial judge upon the hearing that the parties had never separated and were still cohabiting as husband and wife, although she presented the separation agreement to the trial judge for approval. When asked about her failure to make this disclosure to the court she replied that it did not occur to her that "it was any of the court's business."

The record shows that the plaintiff wife had, by words and conduct, led the defendant husband to believe that she would not go ahead with the divorce case and that he, relying upon her conduct and representations was beguiled and prevented from presenting his defense. By her own admission it is clear that she knew that living together as husband and wife after the filing of the divorce petition would work an abandonment of the petition for divorce.

Upon the evidence in the record, we conclude that the defendant was induced by the fraudulent course of conduct and representations of his wife to believe that the proceedings which had been commenced in Cuyahoga County would not be carried on by her and we also conclude that by the fraudulent course of conduct she concealed the fact that she had obtained the uncontested divorce decree for a period of at least five months after the fact. We think it is a fair inference from the evidence shown in the record that the concealment was deliberate and premeditated for the purpose of preventing her husband from learning of the default decree seasonably in time to present his defense or to take action to vacate it. In our opinion the facts show a course of conduct amounting to extrinsic fraud and deceit practiced by the successful party in obtaining a decree of divorce and that this fraud was not discovered until approximately five months after the entry of the decree.

On this appeal plaintiff-appellant assigns thirteen grounds of error. However, in our opinion, the issues here made present a single question of law for our determination which may be stated thus:

"May a divorce decree be vacated for fraud practiced by the prevailing party in obtaining said decree, by petition after term, under §§11631 et seq GC?"

Prior to the constitutional amendment of 1912, reviewing courts of this state were without jurisdiction to review a decree of divorce as distinguished from alimony and property matters. This doctrine of absolute finality applied to proceedings in error as well as to other modes of review. Thus up to the time of the constitutional amendments of 1912, divorce decrees, their sanctity and finality under numerous auuthoritative decisions, could not be reviewed, modified or reversed upon appeal or error and could not be vacated by an original bill in equity or by any statutory proceedings after term, no matter how gross the fraud practiced by the prevailing party.

The leading case in support of this doctrine is **Parish v. Parish,** (1859) 9 Oh St 534, 75 Amer. Dec. 482, where the court refused to grant relief upon an original petition or bill in equity after term, although the divorce decree had been obtained by fraud. This was followed by other cases.

See: Solomon v. Solomon (1904) 4 O. C. C. (n. s.) 321; Casto v. Casto (1907) 10 O. C. C. (n s.) 265; **Mulligan v. Mulligan**

**(1910) 82 Oh St 426;** Epstein v. Epstein, **(1909) 17 O. C. C. (n. s.) 321.**

In **Bay v. Bay,** decided Feb. 6, 1912, **85 Oh St 417,** the doctrine of the Parish case was approved in respect of the divorce decree a vinculo, although this question was not directly at issue.

But under **Section 6 of Article IV of the Ohio Constitution** as amended and adopted Sept. 3, 1912, providing that:

"The courts of appeals shall have * * * jurisdiction to review, affirm, modify, or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law"

it is now well established that judgments and decrees rendered by courts of common pleas in divorce cases may be reviewed, on appeal, on questions of law, including questions involving the weight of the evidence.

See: **14 O. Jur. Divorce & Separation, Sec. 62 p. 451 et seq; Zonars v. Zonars (1920) 101 Oh St 518; Cox v. Cox (1922) 104 Oh St 611; Weeden v. Weeden (1927) 116 Oh St 524.**

Thus, after the year 1912, the doctrine of the **absolute finality** of a decree of divorce which had theretofore been imbedded in the law of Ohio as a matter of public policy, was changed, so that undoubtedly in respect of appeals on questions of law, a decree of divorce was placed upon precisely the same basis as any other judgment.

With this brief summation of the history of the law in respect of the finality of divorce decrees, we come now to the question of whether it is still the law of Ohio that absolute finality attaches to a decree of divorce in all cases except upon review on appeal as contended by the appellant.

Plaintiff relies upon the authority of the Parish case, supra, contending that this case is still the law of Ohio, the syllabus of which is as follows:

"A decree from the bonds of matrimony, although obtained by fraud and false testimony, cannot be set aside on an original bill filed at a subsequent term."

In that case an original bill in equity was filed after term to which a demurrer was interposed, there being no question raised as to the jurisdiction of the court over the par-

ties. The court sustained the demurrer on the eighth ground set out therein, as follows:

"That the decree of divorce is final and conclusive and cannot be reviewed and set aside."

The opinion concludes with these words:

"We therefore feel compelled, though reluctantly, to hold that sound public policy in this class of cases forbids us from setting aside a decree of divorce a vinculo, though obtained by fraud and false testimony on an original bill filed at a subsequent term. Demurrer sustained and bill dismissed."

The court predicated its decision on the ground that the then existing statute which conferred exclusive jurisdiction in divorce cases on the courts of common pleas provided that the decree was final and exclusive and prevented an appeal from the decree of divorce and stated that this constituted a principle of public policy as a matter of protection for innocent persons who might contract a new marriage without knowledge of the fraud.

The statute (Curwen 2, March 1843) which was in effect when the original proceedings were had and though repealed thereafter, provided that:

"No appeal shall be obtained from the decree (divorce) but the same shall be final and conclusive."

Peck J., at page 538 in the Parish case stated, referring to 2 Curwen, 991:

"This statutory provision is nothing more than a legislative recognition of the principle of public policy, that a judgment or decree which affects directly the status of married persons by sundering the matrimonial tie and thereby enabling them to contract new matrimonial relations **with other and innocent persons**, should never be reopened." (Emphasis ours.)

Citing: **Bascom v. Bascom, 7 Ohio 126; Laughery v. Laughery, 15 Ohio 404; Tappan v. Tappan, 6 Oh St 64;** Lucas v. Lucas, 3 Gray 138; Greene v. Greene 2 Gray 361 (68 Mass.).

In the Parish case the court relied upon the authority of and discussed with approval Greene v. Greene, 2 Gray 361 (68 Mass.) saying that it was "in many respects analogous to the case at bar." At that time as in Ohio, there was not in Massachusetts any right of appeal or writ of error allowed by law in divorce cases and our supreme court quoted with approval the following language from the Greene case:

"We have seen no reliable authority opposed to the position above taken, that a decree of divorce a vinculo when no appeal, review or writ of error is allowed by law, or where the time for bringing such review or writ of error has expired is final and conclusive upon the parties and that an original proceeding to set it aside on the ground that it is fraudulently obtained upon false evidence cannot be maintained."

The Ohio court then said, referring to Greene v. Greene:

**"This case seems to be decisive of the point and is amply sustained by principle and authority."** (Emphasis ours.)

The Supreme Court adhered strictly to the doctrine of Parish v. Parish, in all cases coming before the court for review, up to the time of the constitutional amendment of 1912 of Art. IV, Sec. 6. Courts of inferior jurisdiction seemed reluctant to follow the principle that even though fraud was committed by the prevailing party, no relief could be granted the innocent party and in some instances sought to distinguish on the facts. However in Mulligan v. Mulligan, (1908) 11 C. C. (n. s.) an amended petition filed after term to set aside a divorce decree obtained by fraud and perjury was held good on demurrer by the circuit court of Mercer County. Here the issue was squarely met. In an opinion containing an elaborate and exhaustive review of authorities, Hurin, J., speaking for the court said at page 596:

"While the courts of Missouri, in obedience to a mandatory statute follow the Ohio rule of Parish v. Parish, supra and the supposed precedent of the Massachusetts cases of Greene v. Greene and Lucas v. Lucas, supra, we have found no case in any other state where upon facts similar to those in the case at bar, relief has not been granted upon proof of due diligence on the part of the party complaining of the fraud."

The circuit court then pointed out that:

"Even in Massachusetts the supposed precedents of Greene v. Greene and Lucas v. Lucas (69 Mass. 136)" relied upon by Ohio as decisive in Parish v. Parish, had been "completely departed from or explained away" and cited Carley v. Carley, 73 Mass. 545 (decree vacated for fraud within term) and Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393, where the Massachusetts court held that the court had jurisdiction

"to vacate a decree of divorce at a former term by petition after term upon discovery of the fraud."

Whereupon, the circuit court declined to follow Parish v. Parish and earlier Ohio decisions, holding that courts inherently have the right to protect themselves and the public from fraud and perjury.

The supreme court in **82 Oh St 426** made short shift of this decision and without opinion made the following brief entry:

"Judgment reversed and judgment of common pleas court affirmed on authority of **Parish v. Parish, 9 Oh St 534.**"

In **Bay v. Bay** (Feb. 6, 1912) **85 Oh St 417**, the court held in substance that where a husband by false testimony obtained a decree for the wife's aggression and the decree barred her of alimony, dower and other interests in the husband's property, the decree dissolving the marriage relation was conclusive but the decree could thereafter be opened up insofar as it related to the wife's interests in her husband's property. While this decision was entered in 1912 it was before the effective date of the amendment of Sec. 6, Art. IV.

In the case of Nauman v. Nauman (1897) 4 O. C. C. (n. s.) 298 the circuit court of this county held: (Syllabus 2)

"2. A court is not authorized to reopen a divorce case upon a motion filed two days after the decree was rendered where it appears that on the day the motion was filed one of the parties, without the knowledge of the filing, remarried."

In the case of Sapp v. Sapp (1909) 14 O. C. C. (n. s.) 269 the circuit court of Knox County held that the rendition of a decree of divorce fixes the status of the parties **eo instanti** and the marital relation thus severed can be repaired only by the consent of the parties and their remarriage.

Therefore there can be no doubt that **prior** to the effective date of the Constitutional amendment of 1912 absolute finality

was accorded to decrees of divorce under the rule of the Parish case by virtue of the then existing statute and public policy.

What is the state of the law since the Constitutional amendment of **Sec. 6 Art IV** in 1912? May a decree of divorce be set aside either within term for good cause shown or at a subsequent term of court when the decree was obtained by fraud?

In 157 A. L. R. (annotated) the author asserts that today the Parish case can be considered definitely overruled. At pages 44 and 45 we find the following statement:

"About ten years later (after the Mulligan case, 1910, **82 Oh St 426**) and after the Constitution had been amended, the court of appeals took the position that the rule of the Parish case had been overruled by later decisions of the Supreme Court and declared that divorce decrees stood upon the same basis as any other judgment and were subject to the same modes of relief recognized in other cases. In a later case this rule was especially applied to a petition to vacate a divorce decree rendered by default, so that today the Parish case can be considered as definitely overruled."

Citing: **Zonars v. Zonars (1920) 101 Oh St 518; Cox v. Cox (1922) 104 Oh St 611; Wells v. Wells (1922) 105 Oh St 471; Love v. Love (1922) 17 Oh Ap 228; Beck v. Beck (1933) 48 Oh Ap 105; Knapman v. Ford, (1940) 19 O. O. 552.**

The first breach in the doctrine of absolute finality of divorce decrees in respect of their vacation within term came in the case of **Love v. Love (1922) 17 Oh Ap 228,** decided by the Court of Appeals Darke County, where it was held that a

"Decree granting a divorce may in the court's discretion for good cause be opened up and vacated during the term wherein the decree was rendered."

At page 229 the court said in part:

"Under many of the former decisions of the supreme court there was a certain finality accorded to a decree for divorce. This finality in the first instance was based upon a statute. Later on, the statute was repealed but the supreme court still accorded finality to the decree of divorce upon the grounds of public policy. **(Parish v. Parish, 9 Oh St 534.)** This ruling has been recognized as late as the case of **Bay v. Bay, supra (185 Oh St 417)."**

"The case of **Zonars v. Zonars 101 Oh St 518, we think constitutes a new departure.** The Zonars case is not reported in full but the effect of it is necessarily to destroy the finality of the judgment of divorce as established in the case of Parish v. Parish. Since the Zonars case we think it necessarily follows that a decree of divorce stands upon the **same basis as any other judgment of the court of common pleas and is subject to those modes of relief which have been recognized in other cases against judgments entered in that court.**" (Emphasis ours.)

The supreme court overruled the motion to certify the record in this case April 17, 1922.

In 1923 the Court of Appeals of the Second District (Darke County) decided the case of **Potts v. Potts, 21 O. L. R. 326** wherein the court again held that a trial court had jurisdiction to vacate or modify a divorce decree on motion within term for fraud in the procurement of the decree and held further that remarriage was not a bar to such action on the part of the court. In the course of an opinion by Allread, J., we find the following statement:

"Counsel for plaintiff in error cite a number of cases which were decided under the statutes existing prior to the constitutional amendments of 1912 and some decisions of the lower courts rendered after the constitution of 1912 became effective. The supreme court, however, in the case of **Zonars v. Zonars, 101 Oh St 519,** held that the court of appeals had jurisdiction to review the judgment in divorce cases and to vacate the judgment. The Zonars case was followed by the case of **Wells v. Wells, 105 Oh St 471.**
The Court of Appeals of this district in the case of Dora Love v. Eli P. Love, an unreported case from Darke County, held that the trial court in a divorce case had jurisdiction upon motion filed during the judgment term to vacate and set aside a decree of divorce in the reasonable exercise of its discretion.
The Love case was presented to the supreme court on motion for writ of certiorari and the writ was refused. This would re-enforce the strength of the authority of the Darke County case."

Later, in 1927, the case of **Ready v. Ready, 25 Oh Ap 432** was decided by the Court of Appeals of this District, wherein it was sought to reverse a judgment of the Court of Common Pleas for error in denying a motion of the wife made during

term to vacate a decree of divorce granted the husband on the ground of fraud and irregularity in the procurement of the decree. The court, through Sullivan, J., asserted at page 434:

"A primary legal question in the case is whether a divorce decree can be set aside for irregularity and even though subsequent to the divorce a remarriage takes place on the part of the party plaintiff, who was granted the decree. The question involves the contrast in judicial power with respect to cases of this character existing prior to the Constitution of 1912 and those arising subsequent to the adoption of its provisions."

After a discussion of decisions prior and subsequent to the Constitution of 1912, contrasting judicial power, the court reversed the trial court and held that where the plaintiff had perpetrated a fraud in the procurement of a divorce and had remarried in the midst of error proceedings, that such subsequent remarriage was not a bar to a vacation of a divorce decree. The motion to certify in the case was overruled in 25 O. L. R. 548. This series of Court of Appeals decisions interpreting the effect of the constitutional amendments of 1912 and discussing the effect of supreme court rulings in respect thereof upheld the jurisdiction of the trial court to vacate decrees of divorce within term. These rulings are in direct contrast with the Circuit Court of Appeals rulings in such cases as Sapp v. Sapp, and Nauman v. Nauman, supra, rendered prior to 1912.

The litigants in the case of Beck v. Beck, supra, were twice before the court (45 Oh Ap 507 and 48 Oh Ap 105). While there were many complications, the facts germane to the issue here may be summarized briefly:

Velma Beck was plaintiff and commenced her action for divorce and alimony in the court of common pleas of Coshocton County Sept. 28, 1931. In the January, 1932, term, a divorce was granted and alimony allowed. In the April term, 1932, following, Edgar Beck defendant commenced an independent action in Coshocton County to vacate and set aside the judgment for fraud and for want of jurisdiction and prayed for leave to file his answer and make a defense. The Coshocton common pleas court dismissed his petition. The Court of Appeals on May 13, 1933, reversed the judgment of dismissal, vacated the judgment and remanded the cause with instructions to permit defendant to file his answer. 45 Oh Ap 507. The court found that the affidavit for constructive service having been sworn to before a notary public who was attorney of record for defendant, was defective and the court was with-

out jurisdiction. The court also found that the charge of fraud was not sustained by the evidence.

While the facts of the Beck case are not directly analogous to the facts of the instant case, that case being grounded on want of jurisdiction because of the defectively executed affidavit and this case being grounded on fraud, yet the question of the jurisdiction of the court to vacate a decree of divorce after term was present in that case. Therefore the reasoning contained in the opinion of Sherick J., with the concurrence of Lemert and Montgomery JJ., is very cogent. After commenting upon the rule of public policy settled in the Parish case, the court quoting that part of **Art. IV Sec. 6 of the Constitution** as amended in 1912 said:

"The people did not see fit to except from that mandate a judgment of divorce, although they were well acquainted with the theory of public policy and the previous sanctity of divorce decrees. We do not have the temerity necessary to write such an exception into the Constitution.

In **Zonars v. Zonars, 101 Oh St 518,** 130 N. E. 943, the court considered the finality of a divorce decree in so far as the right to have it reviewed in a proceeding in error was concerned, and it was held that it might be reviewed. A decree of divorce, its finality and sanctity, was placed upon the same basis as any other judgment. In other words, the court recognized that the old theory of public policy could not endure as against the people's subsequent constitutional expression. The court in **Wells Jr. v. Wells, 105 Oh St 471,** 138 N. E. 71, again disregards the finality of a decree of divorce. * * * Undoubtedly the court in the Zonars case had in mind §11634 GC which has to do with a motion to vacate a judgment within term. **Sec. 11635 GC** provides the procedure in other cases that is by petition to vacate after term within the time limit established by **§11640 GC.** The petition to vacate in the present instance is grounded upon **§11635 GC** that is upon fraud and upon **§11632 GC** which deals with the opening of a judgment obtained by service of publication. This court reversed the judgment upon the theory that the Coshocton County court had no jurisdiction of the person of the plaintiff in error. We recognize that authorities are listed under the last named section, which hold that this section does not apply to divorce cases. The statute does not so provide. Examination of these cases—all decided before 1912—discloses that they predicate their holdings on the theory of public policy. These statutes are general statutes,

none of which provides an exception in the matter of divorce decrees. We are unable to see any distinction in principle between a right of review of a divorce decree in an error proceeding or a motion to vacate such a judgment within term, and a petition to vacate after term. All were in the past considered not to apply to divorce decrees by virtue of public policy; and not upon statutory inhibition. If the constitutional change supersedes the rule of public policy, as it does, there surely is no **sound** reason to break from the old rule in two instances and cleave to the rule on a petition to vacate after term."

A motion to certify this case was overruled by the supreme court on June 13, 1934.

The supreme court has held in many cases that the constitutional amendments of 1912 of Sec. 6 Art. IV are not subject to enlargement or limitation by legislative action. See **Cincinnati Polyclinic v. Balch, 92 Oh St 415;** Zonars v. Zonars, supra; **Chandler & Taylor v. So. Pac. Co. 104 Oh St 188;** Cox v. Cox, supra; Weeden v. Weeden, supra.

A very important pronouncement bearing upon the jurisdiction of trial courts to vacate or modify a decree of divorce under the statutes at a subsequent term is contained in the case of **Weeden v. Weeden, (1927) 116 Oh St 524.** This was an error proceeding in a divorce case where the court considered the question of whether the courts of appeals of this state had jurisdiction to reverse divorce decrees on the weight of the evidence. In that case it was argued that neither the constitution nor judicial decisions provided procedure for reviewing a divorce case; that the divorce chapter contained no provision for error proceedings **and no provision for filing a motion for new trial,** and it was further urged that §11576 GC. providing **for the granting of a new trial does not relate to divorce decrees.** The supreme court rejected this argument as unsound. Allen J., speaking for a full bench, after discussing the cases of Cox v. Cox and Zonars v. Zonars, supra, said:

"In the Zonars case this court manifestly held that the constitutional jurisdiction of the Courts of Appeals in divorce cases **compelled the application of §11576 GC to divorce judgments** and required the consideration by the Court of Appeals of the question of the weight of the evidence."

"In view of the express provision of the **Constitution Article IV Section 6 which makes no exception in classes of judgments and makes no classification of errors of law**

for which judgments may be reversed and bearing in mind the decisions cited above, we are constrained to overruled the contention of the plaintiff in error and to affirm the judgment of the Court of Appeals."

At the time of this decision it was provided by §11578 GC that a motion for new trial was required to be made within "three days after the verdict or decision was rendered, unless unavoidably prevented from filing it within such time."

It has been held under these sections that a party who has been unavoidably prevented from filing a motion for new trial may file such motion after three days have elapsed even though the clerk has entered judgment on the verdict. See **Coal Co. v. Quirk et al**, 16 O. C. C. (n. s.) 546, affirmed without opinion **80 Oh St 746**. Sec. 11580 GC then in effect provided:

"When, with reasonable diligence, the grounds for a new trial could not be discovered before, but are discovered after the term at which the verdict, report, or decision was rendered or made, the application may be by petition, filed not later than the second term after the discovery, nor more than one year after final judgment was rendered, on which a summons must issue, be returnable and served, or publication made, as in other cases."

Effective October 11, 1945, these sections of the General Code were amended and provided, among other things, that a motion for a new trial must be made ten days after the judgment or decree has been approved by the court in writing and filed with the clerk and providing further that if a party was unavoidably prevented from filing a motion within such time the court may in the interest of justice extend such time. (Sec. 11578 GC.)

New §11580 GC provides that such application may be made after term under the same conditions set forth in the predecessor statute and that the application may be by petition filed not later than the second term after the discovery of the grounds for new trial, nor more than one year after the final judgment or decree was rendered. (Sec. 11580 GC.)

It should be noted here that under these sections applicable at the time the instant case was decided, if a judgment is journalized within the last few days or even on the last day of the term, that a party under the statute must perforce file his application for new trial after the term at which it was rendered. While under the new amendment of §11576-1 GC, a motion for new trial is not necessary as a prerequisite to obtain appellate review on the weight of the evidence, such

a motion may be filed and many situations arise where a motion for new trial is deemed necessary.

It has been held that a petition to vacate a judgment under §11631 et sequi GC, is not of itself a civil or an independent proceeding in an action to affect a judgment rendered therein at a former term of the same court, but is in the nature of and professedly is an application for a new trial. **Taylor v. Taylor, 12 Oh St 169; Bever v. Beardman, 40 Oh St 70 at page 78; Beck v. Beck, 48 Oh Ap 105; Shuck et al v. McDonald, 58 Oh Ap 394; Terry et al v. Claypool, 77 Oh Ap at page 85, and Shedenhelm v. Myers, 77 Oh Ap 385.**

Thus there is no distinction in principle between a motion for a new trial after term for good cause shown on applicable statutory grounds and a proceeding to vacate or modify a judgment or decree after term for good cause shown on applicable statutory grounds under **§11631 et seq, GC.** If then as decided in Weeden v. Weeden, supra, the constitutional jurisdiction of the Court of Appeals "compelled the application of **§11576 et seq, GC,** to divorce judgments" no sound reason now appears for not applying **§11631 et seq, GC,** to divorce decrees, especially when it is considered that a petition to vacate a judgment under such sections is a special proceeding in the nature of an application for a new trial. Stated conversely, upon the basis of the cited and quoted authorities by analogy and reason, it would appear that a divorce decree may be vacated, modified or reviewed upon the same basis as any other judgment before or after term. In relation to statutes providing for relief after judgment the arbitrary bar between the last day of the old term and the first day of the new term no longer exists where within statutory limitations and for good cause a good case is made for such relief.

That divorce decrees may be set aside upon a motion for a new trial is recognized by **§11223-7 GC** (amended October 11, 1945) which relates to the time of filing appeals, in the following language:

"After the journal entry of the final judgment or decree has been approved by the court in writing and filed with the clerk for journalization, the period of time within which appeals shall be perfected to the courts of appeals shall be twenty days, provided that when a motion for new trial has been filed by either party within ten days after * * * judgment or decree has been approved by the court * * * then the time of perfecting the appeal shall not begin to run until the entry of the order overruling or sustaining the motion for new trial."

Sec. 11575 GC as amended Oct. 11, 1945, defines a new trial in the following language:

"A new trial is a re-examination in the same court of the issues after a final order, judgment or decree by the court."

As heretofore observed, a motion for new trial under §11576 GC provides a mode of procedure for securing relief after judgment. Secs. 11631 et seq, GC, being in the chapter entitled "Other relief after judgment" also provide a mode of procedure for relief after judgment, the clear intent and purpose of which is to secure the same result as a motion for new trial if the conditions therein specified exist and the proceedings are instituted within the time limited by §11640 GC. As above noted, divorce decrees and judgments are now subject to vacation, revision and review upon motions to vacate filed within term, upon motions for new trial under §11576 GC and upon review by courts of appeals.

Consistent with the foregoing the conclusion seems inescapable that §§11631 et seq, GC, are applicable to decrees of divorce as well as to all other classes of judgments.

The principle of public policy that divorce decrees are final and conclusive being no longer the law of Ohio, the basis of the doctrine of the Parish case is completely destroyed. This conclusion is in full harmony with the supreme court decisions and courts of appeals decisions rendered subsequent to the constitutional amendments of 1912.

In consideration of all of the foregoing we conclude that under the present state of the law in Ohio a divorce decree may be vacated for fraud practiced by the prevailing party in obtaining a decree of divorce by petition after term under the provisions of §§11631 et seq, GC.

The conclusion herein reached is in complete harmony with the great weight of authority in other jurisdictions throughout the United States, particularly where there is an issue of extrinsic or extraneous fraud as distinguished from intrinsic fraud.

A good example may be found in a review of the Massachusetts decisions. We have heretofore alluded to the cases of Carley v. Carley and Edson v. Edson, where the Massachusetts Supreme Court departed from its rule of public policy laid down in Greene v. Greene and Lucas v. Lucas, supra which was held to be decisive of the issue in Parish v. Parish. While it is true that in the case of Zeitlin v. Zeitlin, 202 Mass. 205, it was held that a decree of divorce

which had become absolute could not be revoked for perjury found to have been committed at the original trial, on the other hand, in the later case of Sampson v. Sampson, 223 Mass. 451, it was held that a decree absolute of divorce could be revoked for fraud of the husband in leading his wife to believe that he had abandoned the suit and thus to refrain from contesting. This was held to be an extraneous act of fraud, as to a subject upon which the courts had not already passed. The facts of that case are closely analogous to the case at bar as here we have a case of extraneous fraud practiced by the wife because the record shows fraudulent inducements by a course of conduct and representations as well as concealment of the wrong done for a period of months after the default decree was fraudulently obtained. The first syllabus of the Sampson case is as follows:

"A petition to vacate a decree of divorce that was entered nisi and afterwards became absolute which alleges that the petitioner was induced by the fraudulent conduct and representations of her husband not to contest the libel, to which she had a complete defense, being fraudulently induced by him to believe that the proceedings had been discontinued, and that she did not know of the granting of the decree until after it had been made absolute, states sufficient ground for relief and an allegation that the petitioner did not receive notice of the libel for divorce, is not necessary."

An examination of supreme court cases of Massachusetts since Sampson v. Sampson (1916) discloses no decisions modifying or overruling the principles of law therein enunciated.

In other jurisdictions throughout the United States the rule is the same. The doctrine applies particularly to default judgments for divorce. See 157 A. L. R. (annotated) page 18, subject "Divorce" where the following statement supported by numerous citations is made:

"An application of these general principles to default judgments for divorce leads to the rule, broadly formulated and universally recognized that such judgments may be set aside or vacated either upon motion or in an original proceeding, whenever they were rendered under such circumstances as would satisfy the court that they were not intended to be authorized by it. The existence of this power of the court to grant relief in proper cases from a default judgment for divorce as surviving the term at which the judgment was

rendered has been recognized, in express language, or by implication, in nearly every jurisdiction. Since the great majority of cases the court's power to grant relief has been invoked because of fraud perpetrated on the defendant spouse or on the court, the statements of the courts in regard to the existence of the power very frequently refer to their power to set aside a default decree of divorce because of fraud.

"Frequently the courts give expression to their authority to vacate a default judgment for divorce by stating that they have the same power over divorce judgments as they have over other judgments, thus expressly refusing to use any other than the general rule or principles governing judgments or decrees generally."

Another proposition requires some discussion before concluding this opinion.

Adverting once again to the Parish case, it is clear that one reason influencing the decision on the ground of public policy was the fear therein expressed that once the matrimonial tie had been sundered, the parties would be enabled to contract new matrimonial relations with **other and innocent persons.** On that ground the court held that a divorce once granted should never be reopened; that to do so would endanger "the peace and good order of society and happiness and well being of those who **innocently** relying upon the stability of a decree of competent jurisdiction, had formed a connection with a person who wrongfully, perhaps, procured its promulgation." The foregoing statement has no application to the facts in the case at bar, because Helbig with whom plaintiff herein contracted a matrimonial alliance secretly in New York State, was obviously not an innocent party but a third party interloper, who, on the record before us, was largely responsible for the present difficulties of the parties. The evidence here tends to show that the very purpose of securing the divorce secretly and fraudulently was to enable the plaintiff to contract the new matrimonial alliance. Certainly on the record there is no advantage taken of another and innocent person.

That the plaintiff was not innocent about contracting the new matrimonial alliance is also indicated in the record. Plaintiff testified that on Sept. 27, 1948, her husband had informed her of his intention to attempt to set aside the divorce decree and that she had communicated this information to her attorney on the last day of September, who suggested that she come to his office and talk the matter over. As indicating her state of mind and attitude, she testified that she said to her attorney:

"And I said, 'there is no sense running around with our tongues hanging out. Nothing has happened yet and I don't think it is worth the time to come down and talk it over until something happens.'"

In view of these facts her secret marriage to her paramour in New York State five days later on Oct. 5, 1948, is not a bar to vacation of the divorce decree obtained by fraud.

"The power of the court to set aside a judgment of divorce has been held by the overwhelming majority of authorities not to be ended by the fact that the party who obtained the judgment has remarried." 157 A. L. R. 46 et sequi.

Citing many cases from many jurisdictions including **Potts v. Potts, 21 O. L. R. 326 (1923).** See also:

**14 O. Jur. Divorce & Separation, Sec. 59 page 448;** Ready v. Ready, 25 L. A. 438, supra; 17 Amer. Jur. 377; Croyle v. Croyle (1944) Md. 40 A. (2d) 374.

While in the Ready case hereinabove cited and quoted the marriage occurred while the appeal was pending, in the instant case it occurred when it was obvious that an effort would be made to invalidate the decree. In either case the principle is the same. Neither party was innocent nor was there an innocent third party involved.

Another contention argued by appellant is that whatever fraud may have been committed was intrinsic rather than extrinsic fraud. With this contention we do not agree. We think the record shows clear and convincing evidence of extrinsic fraud. But we think it is unnecessary to enter into any extended discussion of this subject.

The words of Chief Justice Taft in Toledo Scale Co. v. Comp. Scale Co. 261 U. S. 399, have direct application to this situation, where he said:

"We do not find ourselves obligated to enter upon a consideration of the some times nice distinctions made between intrinsic and extrinsic fraud in the application of the rule because in any case to justify setting aside a decree for fraud, whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense."

Touching the question of public policy in relation to divorce we should recognize the fact that conditions have changed materially since 1858 when the Parish case was decided, almost a hundred years ago.

Marshall and May in their volume entitled "The Divorce Court" published in 1933, state in substance that commencing some time before 1930, there has been annually an army of over half a millon men and women marching through the divorce courts of America. In the county of Cuyahoga alone there was an increase in filings for divorce of 4045 cases in 1933 to an all time high of 9107 in 1946, all of which is a matter of public record. There is nothing that the courts can do to stem the tide of this rapid increase in the divorce rate. That is a social problem. But certainly the courts can be and should be alert to detect and prevent fraud in the securing of divorce decrees wherever possible. Where clear and convincing evidence is adduced, showing that a decree of divorce has been obtained in the practice of fraud by the prevailing party, such a decree should not acquire greater sanctity than a decree in any other case, simply because the parties have been successful in concealing the fraud until after the end of the term. To approve such a principle is to place the stamp of approval on fraud successfully practiced in a divorce case, while no other type of fraudulently obtained decree attains such sanctity. The fact that the prevailing party was successful in concealing the fact of the uncontested decree until after the close of the court term should not make the question of relief from such fraud impossible of attainment in a proper proceeding.

In view of the present state of the law of Ohio, which recognizes that the state is in effect a third party to every marriage and wherein is recognized the proposition that the family is a primary unit of the state, divorce cases should stand on a parity with all other cases.

It is our conclusion that the common pleas court had jurisdiction to entertain this petition to vacate the decree which the trial court found under the evidence had been fraudulently obtained, and in view of the applicable law we do not find error prejudicial to the rights of the appellant who will only be required to submit her case for adjudication on the issues made by the pleadings.

The judgment of the common pleas court should be and is affirmed. Exceptions noted. Order see journal.

McNAMEE, J, concurs.
SKEEL, PJ, dissents.

By SKEEL, PJ (Dissenting).

This cause comes to this court on appeal on questions of law from an order of the Common Pleas Court granting the defendant's motion to vacate a decree of divorce entered at a previous term and returning the case to the active list for trial. The parties to this action were married September 26, 1942, and four children have been born of the marriage, the last child being born on May 30, 1948.

The plaintiff filed her petition for divorce on September 6, 1947. Prior to filing her petition for divorce, the parties had agreed to a property settlement and separation agreement which was signed August 2, 1947. The summons for divorce was served on defendant on October 4, 1947, in Akron, Ohio, the defendant having gone to the court house in Cuyahoga County for the purpose of being served but the return day had passed so that service could not then be made under the original precipe. On October 6, 1947, the defendant procured the plaintiff's signature to an amended property settlement and separation agreement which he had himself rewritten, which provided in part that the defendant was to pay the plaintiff or return to her $5000.00 of her money which had been used by the parties to buy securities, $600.00 which plaintiff had advanced for the purchase of an automobile, and to further pay the plaintiff $100.00 per month as support for the children. The plaintiff was to have all the furniture and the defendant his personal effects and the automobile.

After the service of summons, the terms of the agreement as to division of property were carried out, and the defendant has since said time paid $100.00 per month for the support of the children.

The defendant, in contending that fraud was practiced on him in procuring the divorce, relies strongly on an occasion when he was first told of the fact that plaintiff was pregnant with the fourth child, in a long distance telephone conversation on October 18, 1947. The defendant was in Boston, Massachusetts. He also claims it was about this time that he first learned of an occasion in 1946 of plaintiff's infidelity with one Helbig. Whereupon the defendant drove to Cleveland, arriving the morning of October 19, 1947 and found Mr. Helbig in the home of the parties in the act of dressing and the plaintiff still attired in her night dress. The defendant testified that on this occasion he told plaintiff he would never permit her to have a divorce.

The defendant in his brief refers again and again to the October 19, 1947, incident, and the evidence of infidelity occurring on the Boston trip in 1946, yet the record does not show that he evidenced any particular concern about it at that time. There is no dispute in the record but that the parties lived together as man and wife after the defendant was served with summons and after the occasion just described as well as after the divorce was heard and granted on March 6, 1948. Prior to the trial of the case, the defendant who was out of the city a great deal of the time during this period, received a letter about December 10, 1947, while in Boston, from the plaintiff's lawyer, advising him that he had not filed an answer and that the case could be tried at any time, and that upon receipt of such letter the defendant called the plaintiff and in an attempted explanation the plaintiff told him the letter was a mistake.

The defendant's testimony tends to establish that plaintiff on a number of occasions promised not to go forward with the case although the defendant does not say that the plaintiff agreed to dismiss the action.

It is the plaintiff's contention that there was never any question but that the divorce case would be heard but that they both agreed to conduct themselves in such a way as to keep their respective families and friends from finding out about it. They therefore continued to cohabit as man and wife. This version of the understanding of the parties in part at least is supported by the defendant's testimony where, after describing his hurried return from Boston on Oct. 19, 1947, above referred to, he testified as follows:—

"Q. What did you say to your wife, if anything?
* * *
A. I don't think I said much of anything at that minute.
Q. Was there anything said about the case then?
A. After Mr. Helbig left, she was merely my wife and I talked at that point and I told her under no circumstances would I give her a divorce.
Q. Had you had your summons at that time?
A. Yes, sir.
Q. Then what did you say to her?
A. She maintained that she wanted the divorce.
Q. What did she say beyond that?
A. She said she still wanted the divorce and I said it was out of the question, in view of her condition, and the end of the conversation was that she agreed unconditionally to

take no action on the divorce until after the baby was born and then reconsider it.

* * *

Q. What did she say? The court indicated you can only tell what she said.

A. She said, "All right, I won't get the divorce until after the baby is born and we will talk about it then."

Q. Is that one of the things you relied upon?

A. It is."

As above indicated, it is to be noted that the defendant does not express any very great concern over the conditions he found on this occasion. In fact there is evidence in the record which tends to establish that he and his wife had dinner with Helbig at plaintiff's mother's home in Akron that evening.

The evidence is not greatly in dispute that the defendant did not actually know that the case had been presented to the court and a decree of divorce entered and journal entry filed (all of which took place on March 6, 1948, as above indicated) until just before the first of September, 1948. There was then a complete separation of the parties and the plaintiff married Helbig in New York City on October 5, 1948.

This motion to vacate the decree and judgment of divorce was filed October 12, 1948.

The record presented on this motion clearly indicates that defendant is entitled to little consideration. His conduct has been such that if his interests were the sole consideration of the court the motion should have been overruled.

The plaintiff in her evidence at least attempted to give an accurate statement of the facts without regard to the extent of the damage that many of the admissions had upon her defense to the motion to vacate. But as indicated above, the evidence is undisputed that the parties cohabited together as husband and wife, in exactly the same way as had been true prior to the filing of the case. Whatever grounds the plaintiff had that would justify a divorce decree in her favor because of the aggression of the defendant, were by such continued conduct condoned. And no secret intent, even if agreed to between the parties, could destroy the legal effect of cohabitation as man and wife during the pendency of the divorce action, and if this fact had been brought to the attention of the court at the time of trial the court would have denied the prayer of the plaintiff. The evidence estab-

lishes that when plaintiff presented her case to the court, in the absence of the defendant, he being out of town at that time, nothing was said that would even suggest that the parties had not been separated as the result of the defendant's alleged wrongful conduct and in fact a separation agreement was presented to the court which indicated that a separation had taken place.

We are presented therefore with two questions: (1) does the court have power to vacate a judgment of divorce after term on the ground of fraud practiced on the court by the successful party? (2) does continued cohabitation of the parties as man and wife, after filing a petition for divorce, which fact is not disclosed to the court upon trial, constitute such a fraud upon the court as to require it to vacate such decree when such facts are brought to its attention after term?

The plaintiff-appellant presents other claims of error but they are not supported by the record.

The Supreme Court of Ohio in the case of **Parish v. Parish 9 Oh St 534,** held:

"A decree from the bonds of matrimony, although obtained by defraud and false testimony, cannot be set aside on an original bill filed at a subsequent term."

This case has had a stormy career and on a number of occasions has been somewhat modified, but it has never been overruled insofar as it prohibits the vacating of that part of the divorce decree which dissolves the marital relations between the parties, after term, otherwise than by the regular rules of appellate procedure.

In **Paragraph 59** of **14 O. Jur.,** beginning at **page 444,** the author says, in considering the power of a court to vacate a decree of divorce after term:

"At subsequent term: It is well established in Ohio as a general rule, subject to exceptions in certain cases hereinafter noted, that a decree granting a divorce, although obtained by fraud and false testimony relating either to the jurisdiction of the trial court or to the merits of the case, cannot be set aside on an original petition filed at a subsequent term of the court. And this is true, even though jurisdiction of the defendant in the divorce action was obtained by means of publication only. The provisions of §11632 GC, relating to the opening of judgments and orders obtained without service

other than by publication, being inapplicable to such cases. This rule is based upon 'the principle of public policy * * * that a judgment or decree which affects directly the status of married persons by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened.' Such a course it is said 'would endanger the peace and good order of society, and the happiness and well-being of those who, innocently relying upon the stability of a decree of a court of competent jurisdiction, have formed a connection with the person who wrongfully perhaps, procured its promulgation.' It has been applied in a proceeding to vacate a decree upon the ground that it had been subsequently discovered that the defendant was insane during the pendency and trial of the action, and also at the time of the commission of the acts for which the divorce was granted. The rule is limited, however, to adjudications affecting the marriage status, and does not extend to such portions of a decree, in such case, as deals with the property rights of the parties. So, when the court rendering a decree adjudicating the rights of the parties with respect to alimony or other property interests does not have jurisdiction of the person of the defendant, he or she may thereafter have such decree opened up, insofar as it relates to the defendant's interest in the plaintiff's property and be let in to defend. It is also well established, as a further modification of or exception to the general rule that a divorce decree will not be opened up or vacated at a subsequent term, that where the jurisdiction of the court in a particular case is obtained by means of fraud of such nature as to cause the record to speak falsely, a judgment or decree rendered therein may be set aside for such cause at a subsequent term * * *."

"Also, where a divorce decree is invalid or voidable for fraud, and the reasons for such invalidity are apparent on the face of the record, it will be vacated. A further exception to the general rule against the opening up of a divorce decree at a subsequent term exists in the case where it appears that the court did not have jurisdiction over the defendant by reason of the insufficiency of the service or publication of process. In such case the decree will be set aside, although the plaintiff may have married again in the meantime. But a divorce decree obtained upon service of process by publication only will not be set aside on account of the failure to attach a copy of the petition to the notice mailed to the defendant, where the defendant fails to satisfy the court that he had no actual notice of the proceeding, under the provisions of §11632 GC. The fact that the party on whose application a decree of

divorce has been granted, marries again during the pendency of proceedings in error to reverse the judgment awarding such decree, will not constitute a bar on the ground of public policy, to the vacation of such decree upon the reversal of such judgment; at least where such vacation is asked upon the ground that the decree was procured by fraud."

The case of Mulligan v. Mulligan, reported in 11 C. C. (N. S.) 585, was tried in the Circuit Court of Appeals in December, 1908. The court criticized the social wisdom of the "Parish" case (supra) and gives a number of circumstances where the law of the case would work unusual hardship to established family relations. The court, admitting however, that there is "much to be said on the other side" of the problem, and at page 592 of the opinion said:

"We frankly admit that we have sought in vain for a solution of this question which will do justice to both of these victims of this perjured husband * * *."

The facts alleged in the Mulligan case (supra) presented a case of fraud practiced on the court, and the defendant, equally as flagrant as the facts in the Parish case. The defendant in the motion filed after term to vacate a decree of divorce, charged that the plaintiff husband was not a resident of Ohio or of the County of Mercer, where the action was filed, for the length of time required by statute, and that the plaintiff's affidavit for constructive service was untrue because he knew at all times where the defendant could be found. Likewise, it was alleged that the evidence upon which the decree was entered was perjured. After the decree was entered the plaintiff remarried. The common pleas court sustained a demurrer filed by the plaintiff to defendant's motion to vacate, which motion was based on grounds of fraud under the provisions of §5354 Revised Statutes and §5355 Revised Statutes (now §§11631 and 11632 GC). The court held in the second paragraph of the headnotes:

"A decree of divorce obtained by fraud and perjury on the facts being shown, may be set aside after term at which the divorce was granted and notwithstanding the remarriage of the guilty party. **Parish v. Parish, 9 Oh St 534** and earlier Ohio decisions not followed."

The Supreme Court in **82 Oh St .426,** without opinion, reversed the Circuit Court of Appeals and affirmed the ruling of the trial court by the following entry:

"Judgment reversed and judgment of the Common Pleas Court affirmed on authority of **Parish v. Parish, 9 Oh St 534.**"

This case was decided in 1910.

The Supreme Court of Ohio, in the case of **Bay v. Bay, 85 Oh St 417,** again affirmed the principles of the Parish case as to the finality of the decree, after term, dissolving the marital relationship. The Bay case deals only with property rights, the alleged offending husband having died before the petition to vacate the divorce was filed. The court at page 426 of the opinion said:

"If this petition and answer to be filed in the original case and the amendment thereto, together with the affidavits in support thereof are to be taken as true, the court was grossly imposed upon and she was fraudulently deprived of an opportunity to ·defend her rights upon the hearing of the divorce case. But it is conceded that the ruling in the **Parish v. Parish** case, **9 Oh St 534,** which has been steadily adhered to would preclude any reconsideration of the divorce issue, even if the husband were not now dead. The question still remains,—Can the defendant be at the same time thus fraudulently deprived of her property rights without remedy? We see nothing in the judgment or in the reasoning in Parish v. Parish which would justify its extension to this phase of the present case. That case was expressly limited in the opinion as follows:

'We therefore feel compelled, though reluctantly, to hold that sound public policy in this class of cases, forbids us from setting aside a decree of divorce a vinculo, though obtained by fraud and false testimony, on an original bill filed at a subsequent term.'

"We think that it would be doing violence to the language of the.court to hold that 'sound public policy' would protect the fruits of fraud and perjury beyond the mere severance of the marriage relation.

"An analysis of the cases will disclose the fact that this court has always clearly distinguished the reviewable nature of a judgment in a divorce proceeding respecting property interests, from the finality of the divorce; and that it has gone beyond this, in certain cases and in furtherance of justice, to declare that the wife may maintain an action for alimony

as 'wife' although by reason of a previous dissolution by a decree of divorce the matrimonial relation no longer exists. See **Mansfield v. McIntyre et al, 10 Oh St 27; Cox v. Cox, 19 Oh St 502; Cox v. Cox, 20 Oh St 439; Woods v. Waddle, 44 Oh St 449; McGill v. Deming, 44 Oh St 634; Weidman v. Weidman, 57 Oh St 101; Doerr v. Forsythe Admrx., 50 Oh St 726; Coffman Admr. et al v. Finney, Admr. et al, 65 Oh St 61; Hassaurek v. Markbreit, Admr. 68 Oh St 554."**

The syllabus provides:

"Where a husband, by fraud and false testimony, obtains a decree of divorce for the wife's aggression and the decree also, by reason of the wife's aggression, so found, bars her of alimony, dower and all other interest in the husband's property the decree dissolving the marriage relation is conclusive; but, when the court making such decree did not have jurisdiction of the wife's person she may thereafter have said decree and the issues opened up so far as they relate to her interests in the husband's property and be let in to defend.".

This case was decided February 12, 1912. It clearly maintains the public policy of the State announced in the Parish case, with regard to the finality of that part of a divorce decree which dissolves the marital relations of the parties where the court, as in the instant case, had acquired jurisdiction of the parties and has by law jurisdiction of the subject matter of the case.

The claim that the public policy of the State was changed by the Constitutional Amendments of 1912 (adopted Sept. 3, 1912) is unfounded. The right to a review of a decree of divorce on questions of law, including the dissolution of the marital relationship, to the Court of Appeals, was clearly established by **Section 6, Article 4 of the Constitution,** as amended, and effective Sept. 3, 1912. But such right to prosecute an appeal on questions of law, prosecuted within the provisions of the statute providing for appellate procedure is not to be confused with an attempt to vacate such decree under §11631 GC after term, and after the time for appeal has been permitted to lapse. The case law of the state holds in unambiguous terms that Section 5354 Rev. Stat, which became effective in 1879 (Now §11631 GC) does not apply to divorce cases.

The case of **Beck v. Beck, 45 Oh Ap 507** and **48 Oh Ap 105** is of no assistance to this defendant.

The first case was one in which the plaintiff by separate action was seeking to reverse an adverse ruling wherein he was seeking to procure the vacation of a decree of divorce and an order to pay alimony in an independent action wherein defendant in error was plaintiff and plaintiff in error was defendant. The grounds upon which he based his right to vacate the decree as shown by the amended petition filed after term, was that the decree was procured by fraud and that the court was without jurisdiction.

The Court of Appeals found the appeal was not well taken on the question of fraud in procuring the divorce decree and would have likewise disposed of the question of jurisdiction to enter a decree of alimony to be paid out of the defendant's property then within the jurisdiction of the court had it not been for the fact that there was an unsurmountable defect in the affidavit filed in the case upon which constructive service was based. The court thereupon held that, because the court was not vested with jurisdiction of the defendant in the divorce action, it was without power to enter a decree. It was therefore held that the trial court should have vacated the decree. The decision was founded entirely on the fact that the court in the divorce case was without jurisdiction of the defendant. The court then says that the record discloses that this plaintiff in error started an action in Ashland County but because of this proceeding it must be considered that he has abandoned such action and entered his appearance in the Coshocton County case and should be permitted to file his answer in such action.

Thereafter, the plaintiff in error was granted a decree of divorce in the Ashland County case, the defendant in error not having answered because the Court of Appeals had said that the said plaintiff in the Ashland County case must have abandoned such case having entered his appearance in the action in Coshocton County. The jurisdiction of the Coshocton County common pleas court was transferred to Tuscarawas County on what was held to be a motion for change of venue. The plaintiff in that case then asked for an order for temporary alimony. This motion was opposed by the defendant on the ground that the issues in that action had been concluded by the divorce decree granted him in the Ashland County action. The trial court overruled the defendant's plea of res judicata, and the Court of Appeals affirmed such ruling.

Nowhere in either of these cases was the power of a court

(having acquired jurisdiction of the parties) to vacate a decree of divorce entered therein after term, considered. And even if by any stretch of the imagination what the court in the last appeal said in regard to the Parish case, could be understood as opposed to the theory of the Parish case, such court of course could not reverse the Supreme Court.

The holdings of our courts on this subject are not without support in other jurisdictions. In the case of Zeitlan v. Zeitlan, 202 Mass. 205, the court says at page 207:

"This is a petition to vacate a decree of divorce obtained by the respondent against the petitioner. The jurisdiction of the court that granted the divorce, both over the case and the parties, was perfect. The ground on which the petition rests is that the case for a divorce was made out at the hearing by perjured testimony, knowingly procured by the libellant. The only question presented is whether a decree of divorce so obtained should be vacated upon proof of the fraud practiced upon the court.

It is in the interests of justice that, after a trial and final judgment in a case, the matters heard and adjudicated shall not be opened for a further hearing because of a supposed error in the determination of facts by the tribunal that heard the evidence. A contention that some part of the material testimony was false might be made with plausibility in a large proportion of the cases, that are tried. A contention that the prevailing party knowingly gave or procured false testimony upon an issue involved might be made and strongly supported in a great many cases. It is against public policy to open cases on no other ground than this."

Also in Clarke v. Clarke, 262 Mass. 297, the second paragraph of the syllabus provides:

"Allegations presented in a petition by a libelee filed three years and eight months after the entry of a decree absolute and seeking that such decree be vacated, to the effect that the petitioner had not committed adultery, which was the sole charge made in the libel; that she was induced to make admissions of guilt by the threats and duress to which she was subjected by the libellant; and that the libellant after the decree became absolute had made false representations and promises which he did not fulfill, furnish no ground for vacation of the decree, it appearing that the court had jurisdiction of the case and that the libelee had not been wrongfully deprived of her day in court." See also: Nation v. Nation, 206 Ala. 397 (90 So. 494)

It is not to be supposed that the decisions are uniform upon this subject. In Nelson on Divorce and Alimony, Vol. II, paragraph 28.31 at page 187, the author says:

"In a number of instances it has been held that it is such fraud as to warrant the vacation of a divorce decree that it was applied for and obtained by the opposite spouse after a pretended reconciliation and without warning or advising the other party of intention to do so. In several instances, it has been held to be such fraud, as to warrant setting aside a decree that the spouse who obtained it lulled his or her consort into the belief that the suit was non-existant, or had been dropped, or would be dismissed. Where such circumstances are alleged, it is up to the court to which the application to vacate is presented, to weight and appraise the testimony and determine wherein the truth lies, and it must necessarily be given a fair range of judgment. If it does not appear that the applicant for relief from the decree was free from fault and has a meritorious defense, the application is properly denied."

The text just quoted is supported by the following cases: Haygood v. Haygood, 190 Ga. 445, 9 So Ed. (2d) 834. Kronman v. Kronman, 129 Cal. App. 10, 18 Pac. (2d) 712.

In the Haygood case, the parties lived in Clayton County as husband and wife. The husband thereafter filed suit for divorce in Fulton County. After the filing of the divorce suit the husband told the wife that "he was not going through with the divorce" and they thereafter cohabited as husband and wife until the decree was taken. The court said in paragraph 3, 4 and 5 of the headnotes:

"3. The constitutional provision that divorce suits shall be brought in county wherein defendant resides, if in state, or if defendant be not a resident of state, in county wherein plaintiff resides, is mandatory and exhaustive and jurisdiction cannot be conferred by consent, waiver or otherwise on courts in other counties. **Const. Art. 6 Sec. 15 Parag. 1.**

4. On appeal from judgment overruling demurrer to petition in equity to declare divorce verdicts and decree void, no presumption of jurisdiction of court granting divorce can prevail on basis of such verdicts and decree, where petition charged want of jurisdiction of divorce suit because defendant, residing in state, did not reside in county wherein suit was brought at time of institution thereof.

5. A petition alleging that petitioner's husband while re-

siding with petitioner in a certain county, instituted divorce suit in another county, that they cohabited until granting of final decree, that he told petitioner at all times before final hearing and second divorce verdict that he was not going through with the divorce, that court did not have jurisdiction of parties and that defendant swore falsely, that bona fide state of separation existed between parties, alleged sufficient grounds for declaring divorce verdicts and decree void for want of jurisdiction."

In the Kronman case, supra, the plaintiff filed action for divorce upon which an interlocutory decree of divorce from the defendant was entered by default on plaintiff's complaint of extreme cruelty. Later without plaintiff's knowledge, the defendant requested the court to make its decree final which was done without notice to the plaintiff and without her knowledge. Meantime there was evidence that the parties had resumed marital relations, living together as husband and wife. The court held in the headnotes:

"1. Court has inherent power, not limited by statute, to vacate decree obtained by fraud.

2. That notice of motion to vacate decree stated it was made under statute and for fraud did not deprive court of inherent jurisdiction to vacate decree obtained by fraud.

3. Law favors reconciliation between separated spouses.

4. Obtaining final divorce decree, after reconciliation and resumption of marital relations following interlocutory decree, without notice or knowledge of other spouse, is extrinsic fraud as to both other spouses and court.

5. 'Obtaining a final divorce decree under such circumstances is extrinsic fraud, not only as to the other spouse, but also in so far as the court itself granting such decree is concerned, since it is effected through concealment from the court in an ex parte proceeding of facts which the party requesting the final decree is bound to disclose, and which, if disclosed, would have rendered improper the granting and impossible the procurement of the final decree.' "

In the case of Walker v. Walker, 198 Wash. 150, 87 Pac. (2d) 479, the husband brought action for divorce after two previous cases brought by the wife had been dismissed, and an interlocutory decree had been entered in February, 1932. The final decree was entered in April, 1934. There was set off to the wife a fair proportion of the husband's property by such final decree. In bringing action to set aside the

decree, the defendant wife alleged that after the interlocutory decree the parties had agreed to abandon the divorce proceeding and would, in an attempt to save some of their mortgaged property, work the home farm and resume their marital relation in every respect. The court held:

"1. Whether a final divorce decree obtained by fraud should be annulled is within discretion of court which entered it.

2. Where trial court refused to set aside final divorce decree entered by it on ground that it was procured by fraud, Supreme Court would assume that trial court cognizant of its inherent power to set decree aside and either determined that fraud had not been committed or concluded that it was not for the public interest to annul the decree.

3. Refusal by court which entered divorce decree to set it aside on ground it was obtained by fraud was not abuse of discretion, especially where wife alleged that husband and wife could not and would not assume their former relations, and finding indicated that it was highly improbable that a different property division would be made in another divorce action."

In the case of Nation v. Nation, supra, the husband had filed a petition for divorce against his wife on the ground of marital infidelity upon which a final decree had been entered. The plaintiff by bill in this action sought to set aside and annul said decree. The plaintiff's evidence showed that the final decree was entered June 17, 1919, but that the parties continued to live together as husband and wife until September, 1919. When the plaintiff first learned of the divorce she left the defendant and did not thereafter sustain the marital relationship. It was further charged by the plaintiff that the infidelity charged against her in the divorce case was untrue and was supported by perjured testimony. She further charged that her husband assured her that the divorce case was filed in a fit of anger and that he would have it dismissed and on subsequent occasions he told her the suit had been withdrawn and that he had no intention of getting a divorce and that these assurances were confirmed by his continuing to live with her as husband. Upon these allegations the court sustained a demurrer to the plaintiff's bill and held:

"2. One attacking a judgment for fraud, accident or mistake, must not only show that the judgment was the result of such intervention, but also that he was free from fault or neglect.

3. Where wife was served with writ of subpoena in action for divorce, and husband stated he would have the suit dismissed and continued to live with her after he was granted a default divorce without her knowledge, she was not entitled to have the decree set aside for fraud, where she made no effort to ascertain for herself the truth of her husband's representations.

4. A bill to annul a default decree of divorce obtained by husband, upon the ground of husband's procurement of perjured testimony, was without equity."

This case gives support to the plaintiff's theory of this case.

It is not suggested in any of the cases referred to in Nelson on Divorce & Alimony, that the States wherein decrees of divorce have been vacated after term on the ground of fraud, that questions of public policy were involved. In any event, the Supreme Court of Ohio has definitely held that the vacating of a decree of divorce after term, so as to recreate the marital relation, otherwise than in the regular channels of appellate procedure, is against sound public policy and that the provisions of §11631 GC does not apply to that part of a divorce decree wherein the marital relation is dissolved and although strong arguments against such holding have since been presented to the court on two occasions the court has steadfastly adhered to the rule of the Parish case.

In Harvard Law Review, 409, dealing with the doctrine of **Stare Decisis**, the author says:

"A deliberate or solemn decision of a court or judge made after argument on a question of law fairly arising in a case and necessary to its determination, is an authority or binding precedent, in the same court or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy; but the degree of authority belonging to such a precedent depends, of necessity, on its agreement with the spirit of the times or the judgment of subsequent tribunals upon its correctness as a statement of the existing or actual law and the compulsion or exigency of the doctrine is, in the last analysis moral and intellectual, rather than arbitrary or inflexible."

The Supreme Court has twice in clear and unmistakable terms affirmed the doctrine of the Parish case (supra) as a doctrine of public policy in this State. Until that court has overruled the legal principle of the Parish case, it is the duty of this court to abide by the decision.

There has been no radical change in the divorce problem since the last pronouncement of the Court in 1912. If anything, a more liberal view toward social betterment by affording relief from matrimonial obligation where harmonious family relationship is impossible, seems to be at hand. The family unit is the base of our social organization. The protection and support of family relationship and the obligation flowing therefrom must be the first consideration of the law.

The legislature has by law provided ten grounds for divorce which is by far more liberal than is true in a great many other states, in some of which only one or two grounds are provided. The divorce problem is a most difficult one and when considered by our legislature in recent years instead of making it more difficult to seek relief from matrimonial relationships they have tried to help solve the problem by enacting additional restrictive regulations as a condition precedent to consummating the marital relations. Whatever change of procedure, in dealing with domestic relations under changing conditions is necessary in solving these important social problems, it is for the legislature and not the courts to point the way.

The rule of the Parish case was pronounced in 1859. The legislature has never found it necessary to enact a contrary rule although they have twice dealt with related subjects. This court is therefore bound by the Parish case. The facts here presented as above set forth are not nearly as strong as in the Parish case, supra, or the Mulligan case, supra. The defendant has little to recommend him to the court. The trial court in the divorce case undoubtedly had acquired jurisdiction of him. By his conduct he condoned the claimed acts of aggression of the plaintiff. He remained with the plaintiff knowing full well that the divorce case was still pending so that he took part in the very fraud about which he complains. His suggestion that the plaintiff be put on probation to him, until her conduct meets a standard which he should determine could only be the demands of a supreme egotist. The evidence shows that the parties could never join in a true family relationship so that no social benefit will come of vacating this divorce decree.

But even though the facts are weak, because of the conduct of the defendant, the plaintiff's conduct in continuing to cohabit with the defendant after bringing action for divorce is not to be recommended and were it not for the Ohio rule that it is against public policy to vacate that part of a divorce decree which has dissolved the marital relations of the parties, after term, in a case in which the facts could be

**400**

said to justify such action when considered in the light of all the circumstances, we might come to a different conclusion.

Having concluded that the court is bound by the rule of the Parish case, it is unnecessary to consider at length the question of continued cohabitation of the parties as husband and wife after one of the parties had filed a petition for divorce and continuing such relationship until trial, without making such facts known to the trial court at the time of trial constitutes a fraud upon the court. It is enough to say, under the circumstances, that such conduct would, without question, constitute fraudulent conduct. The plaintiff on the trial of either a contested or uncontested case, owes the duty to disclose the conduct of the parties after the filing of the divorce case. See: Shinn v. Shinn, 148 Neb. 832, 174 A. L. R. 510; 29 N. W. (2d) 629 (1947).

The motion under the rule of the Parish case supra, should be overruled.